TERRITORY *v.* DAVID L. DESHA, TAN LO, SAMUEL C. LAU, KANICHI OKI, SHINKICHI KOZUKI, LEONG YAU, ALSO KNOWN AS L. AYAU, LUKE HOO AND JAMES ACHUCK.

No. 1874.

ARGUED MAY 7, 1930.  DECIDED MAY 29, 1930.

PERRY, C. J., BANKS AND PARSONS, JJ.

OPINION OF THE COURT BY PERRY, C. J.

The present appellant, together with one David L. Desha, and six others, were jointly indicted for the crime

of conspiracy. The appellant and Desha were tried separately from the six others. Desha was acquitted and the appellant was convicted, the verdict reading: "We, the jury * * * find James Achuck guilty in the third count only and recommend extreme leniency." Subsequently a *nolle prosequi* was entered as to the six others and they were discharged. The appellant by writ of error assigns a number of alleged errors.

A demurrer to the third count of the indictment (as well as to others) was overruled. The third count was as follows: "The grand jury * * * in order to charge the crime of conspiracy to prevent, obstruct, defeat and pervert the course of justice arising from the same criminal acts and transactions as hereinabove set forth in the first and second counts of this indictment, do further say * * * that David L. Desha * * * James Achuck" and six others who are named, at a time and place stated, "together with Claus L. Roberts and certain other persons whose names are * * * unknown, did knowingly," and "feloniously * * * combine, conspire, mutually undertake, concert and agree together to prevent, obstruct, defeat and pervert the course of justice, that is, to prevent, obstruct, defeat, pervert, hinder and delay the apprehension and prosecution of certain persons unlawfully conducting and engaged in gambling and gambling games, prostitution and houses of prostitution, bootlegging and violations of the National Prohibition Act * * * by means of collecting lawful money * * * from said certain persons and paying the same or a portion of the same over to David L. Desha, sheriff of the City and County of Honolulu, and Charles S. Davis, city and county attorney of the City and County of Honolulu, to protect said certain persons from arrest and prosecution" by the said Desha and Davis. The essentials of the charge are that the defendants did feloniously conspire to obstruct and

defeat the course of justice by collecting money from violators of the laws mentioned and therewith bribing the sheriff and the county attorney so as to secure immunity for said law-breakers from arrest and prosecution. Two of the grounds of the demurrer are that the third count does not state facts sufficient to constitute an offense against the laws of this Territory and that it does not set forth facts "which would constitute the statutory crime of preventing or obstructing the course of justice."

Our statute, section 4331, R. L. 1925, defines conspiracy as follows: "A conspiracy is a malicious or fraudulent combination or mutual undertaking or concerting together of two or more, to commit any offense or instigate any one thereto, or charge any one therewith; or to do what plainly and directly tends to excite or occasion offense, or what is obviously and directly wrongfully injurious to another: for instance—a confederacy to commit murder, robbery, theft, burglary or any other offense prohibited by law; to prevent, obstruct, defeat or pervert the course of justice, by suborning a witness, tampering with jurors, or the like offenses." Other instances are given. If the instances above quoted from section 4331 had not been expressly stated by the legislature there might, perhaps, be some difficulty in determining whether under this section there must be a conspiracy to commit a statutory offense of "obstructing and perverting the course of justice" by bribing the sheriff and the county attorney to furnish immunity to criminals. There is no statutory offense in this jurisdiction which is therein named "obstructing and perverting the course of justice" by bribing the sheriff and the prosecuting officer. It is sufficient, however, for the purposes of this case that the legislature itself has in express words said that it is a criminal, punishable conspiracy "to prevent, obstruct, defeat or pervert the course of justice, by suborning a wit-

ness, tampering with jurors, or the like offenses." While it is a statutory offense to suborn witnesses and another statutory offense to corruptly influence jurors, neither of these offenses is named or referred to in the statute as "obstructing or perverting the course of justice." What the legislature had in mind was, doubtless, that these acts do obstruct and pervert the course of justice and that a conspiracy to commit them is criminal and punishable. But subornation of witnesses and the corruption of jurors are given in the statute merely as illustrations of how the course of justice may be obstructed or perverted,— illustrations of the kinds of conspiracies that are punishable. If the conspiracy is to obstruct justice by other "like offenses" it is equally criminal and punishable. By "like offenses" is meant those which are calculated to accomplish the same purpose of obstructing, defeating or perverting the course of justice. There could be no conspiracy better calculated to accomplish that end than one by means of bribery to persuade the sheriff and the chief prosecuting officer of the county to grant immunity from arrest and prosecution to those of the violators of the laws against gambling, prostitution and traffic in liquor who are willing to pay for the immunity or protection. Such bribery is a statutory offense. R. L. 1925, Sec. 4309. That section reads: "Whoever corruptly gives or promises to any executive, legislative or judicial officer, or to any master in chancery, juror, appraiser, referee, arbitrator or umpire, any gift, gratuity, service or benefit, with intent to influence his vote, judgment, opinion, decision or other acts as such in any case, question, proceeding or matter pending, or that may by law come or be brought before him in his capacity as aforesaid, shall be punished by imprisonment at hard labor not more than two years, or by fine not exceeding five hundred dollars." It has been definitely held by this court that an attempt by a promise

of a gift of money to influence a prosecuting officer, even before the intended commission of an offense, in his decision and action concerning the criminal prosecution of the offender, is punishable under this section. *Tong Kai* v. *Territory,* 15 Haw. 612, 615. We do not understand that anything to the contrary was said in *Territory* v. *Scully,* 22 Haw. 618, or in *Territory* v. *Miguel,* 18 Haw. 402.

A witness, Claus Roberts, testified that in pursuance of an agreement by certain of the alleged conspirators he had prepared a letter which was intended to be signed by defendant Desha. His testimony showing that the unsigned draft of letter had passed to Desha or to his attorney, Deputy City and County Attorney Brooks, who was conducting the prosecution, made efforts to obtain testimony from the witness relating to the contents of the letter. In the course of those efforts, some of the rulings of the trial judge having been adverse, Mr. Brooks said: "I am prohibited by the statute from calling the defendant to testify or produce letters." Counsel for the present appellant made objection and asked the presiding judge to rule that the statement constituted misconduct and to enter a mistrial and discharge the jury. This the court refused to do and instead said to the jury: "Gentlemen of the jury, under the statute the defendant cannot be compelled to testify in the case, his failure to testify cannot be taken as evidence against him, nor can his failure to testify or produce evidence be referred to by the government in argument or otherwise, and you will entirely disregard that comment of the prosecuting attorney, made a few moments ago, that he could not compel the defendant to produce evidence, and dismiss it from your minds, forget it. You will be instructed further along the same lines at the close of the case." In our opinion the error of the prosecuting attorney in making the comment objected to was cured by the prompt, direct and unambiguous in-

struction of the court. The jury must be credited with the desire and purpose to accept the views of the law and of its own duties declared by the court and must also be credited with the ability to understand the direction given to dismiss the comment from their minds and to understand that the defendant could not be compelled to testify and that his failure to testify could not be regarded as evidence against him.

In his closing argument to the jury Mr. Brooks made the following statement: "Now, gentlemen of the jury, a great deal has been said about sympathy for David Desha. I said this morning that I thought and did feel at the time, that he had forfeited his right to sympathy. There is no question about the guilt of each man; there is no question about it, the evidence shows it. Their testimony practically amounts to a plea of guilty. But, gentlemen of the jury, I will say this: I believe David Desha has been led into this thing by the graft ring which has been operating, according to the statements, for some time. We want to stop it if we can. We want to make this place a sane and safe place to live in. I don't care anything about the punishment in this case, no matter what his honor may see fit to inflict; but brother Stafford said it means life and they must go to the penitentiary. I think it is only fair for me to tell you there is a wide latitude given to the court by the legislature in matters of punishment that the court may inflict. The court can either inflict a fine, or imprisonment, and I want to say to you again, that there is no question, gentlemen, but that the evidence shows these men guilty. But if you think that David Desha is guilty in a lesser degree than Achuck, ————" Thereupon he was interrupted and the following proceedings were had: "Mr. Lightfoot: I object to this line of argument, if it please the court. It is entirely improper to refer to the matter of punishment, especially

referring to the fact that there may be fines imposed, and I wish to note an exception to the remarks of counsel, as being prejudicial, error, and misconduct. Mr. Stafford: I ask the court, so that the jury may have the fact, let the court tell the jury exactly what the statute is. Mr. Brooks: No objection to that. Mr. Stafford: So that they may know exactly what the maximum punishment and maximum fine are. The Court: It is true, Captain Stafford, the court has the widest latitude—— Mr. Stafford: Anything up to five years? The Court: Ten years maximum and one minute minimum. Mr. Brooks: The point I was making is this—— Mr. Stafford: That is the minimum that the court gives for the actual confinement, but up to the whole period of ten years they are never out of legal custody until the ten years have passed. Mr. Brooks: I would not have mentioned it, as I said before, if brother Stafford had not stood up before you and impressed upon you that they were going to send these men to the penitentiary. I don't care anything about what the punishment is, and we have nothing to do with it. As far as the law is concerned every citizen should and is presumed to know the law. I am not supposed to give you any new information, but I do say this, gentlemen, in all sincerity,—that the evidence shows that these men are guilty. If you believe that David Desha is entitled to sympathy; if you think that he was led into this and was tempted beyond his power to resist; then you have a right to make a recommendation—— Mr. Lightfoot: Again I object to this line of argument and assign the same as misconduct of counsel, and ask for a ruling on this again. The matter of sentence and punishment and recommendation for leniency cannot be argued to the jury, and brother Brooks knows that. It is just a bait to get a compromise verdict if he can. The court: Objection overruled. (Exceptions noted for both defendants.) The court: The

court will say this, in that connection, however. This is proper rebuttal argument brought out by counsel for the defense. The court will say this, however, to you gentlemen of the jury: that the matter of imposition of sentence is a responsibility which, under the law, devolves solely upon the court. Your responsibility ends with your verdict of guilty or not guilty. The duty of the court under the statute disposes of the matter of sentence." As to this also we think that there was no reversible error. The court very distinctly informed the jury that the matter of punishment was one solely within its province and that the jury had nothing to do with that subject. It is not to be supposed that, having heard thus clearly from the presiding judge with reference to the limits of the sentence, which he told them might be as high as ten years as well as as low as one minute, and the exclusive power of the judge, nevertheless the jury was led to convict the defendant Achuck upon the theory that he would be lightly dealt with in the sentence.

Concerning "entrapment," the presiding judge refused to give the following six instructions requested by the defendant:

No. 9. "I instruct you that by entrapment it is meant that where a defendant is induced by the importunities of government agents to violate the law and that through the instigation of such agents they violate the law where they otherwise would not have done, then in law they have been entrapped."

No. 10. "I instruct you if you believe, from the evidence, that the defendants were induced by the importunities of the government agents to violate the law, and that they would otherwise not have violated the law, then you should return a verdict of not guilty as it is the policy of the law not to uphold a conviction in any case where the offense was committed through the instigation of government agents."

No. 11. "I instruct you that a government official cannot conspire with other persons to violate the laws for the purpose of getting such persons convicted of a crime. The conspiracy with which the defendants are charged must be proven to exist independently of any inducement to enter therein by any government official. If you find, therefore, that conspiracy charged in the indictment, if such conspiracy is found to have existed or if you have any reasonable doubt thereof, originated in the mind of the city and county attorney and was instilled by him into the mind of the defendant, Achuck, and that the initial suggestion and initiative came from the city and county attorney and that the defendants were moved by sympathetic appeal or any impelling persuasion of the city and county attorney, to violate the law in furtherance of said conspiracy, then it is your duty to find the defendants, Desha and Achuck, not guilty."

No. 12. "I instruct you that if you believe, from the evidence, that the government officer and witness, Charles S. Davis, through false statements made to the defendant, Achuck, to the effect that he could profitably ally himself with the said Charles S. Davis in a scheme for obtaining money for vice protection, and other enticing and alluring statements, and through such statements, which were false, persuaded and lured the defendant into the conspiracy for which the defendant stands indicted, and the defendant, Achuck, believing the statements made by Davis were true, was induced thus to violate the law, and that said defendant was not theretofore willing thus to violate the law, and would not otherwise have violated the law, then the jury should find the defendant, Achuck, not guilty. I further instruct you that if you believe, beyond a reasonable doubt, that David L. Desha took part in the conspiracy as alleged in the different counts of the indictment, but nevertheless that you believe that the reason for his taking part in such conspiracy was on account of the persuasion and inducements and suggestions set going by Charles S. Davis, whether said suggestions, persuasion or inducements came through the said Charles S. Davis directly or through some other person at the suggestion

or with the consent of said Charles S. Davis, then it will be your duty to find the defendant, David L. Desha, not guilty of all counts of the indictment."

No. 12A. "I instruct you that the first duties of officers of the law are to prevent, not to punish crime, and it is not their duty to incite and create crime for the sole purpose of prosecuting and punishing it. If you find from the evidence presented that the accused have never committed such an offense as that charged against them prior to the time when they are charged with the offense prosecuted, and never had conceived any intention of committing the offense prosecuted, or any such offense, and had not the means to do so, the fact that the officers of the government incited and by persuasion and false representation lured them to commit the offense charged, in order to entrap, arrest and prosecute them therefor, is and ought to be fatal to the prosecution, and to entitle the accused to a verdict of not guilty."

No. 12B. "The defendants are charged with three counts of conspiracy. The defendants claim that they were entrapped into so conspiring through the instigation of the city and county attorney, Charles S. Davis, and that the said conspiracy and agreement would not have been entered into at all, if it had not been for the persuasion and importunities and false statements made by the said Charles S. Davis for the purpose of entrapping them into the commission of the offense; and in this connection I charge you that if you believe from the evidence that the defendants were induced by the solicitation and importunities of the government's officer to violate the law and that through the instigation of the city and county attorney, Charles S. Davis, representing the government, the defendants were induced to conspire unlawfully and that they otherwise would not have violated the law, then you should return a verdict of 'not guilty' as it is the policy of the courts not to uphold a conviction in any case where the offense was committed through the instigation of the government officers."

In their stead the following instruction was given: "One of the defenses relied upon in this case is entrap-

ment. The law on this subject is as follows: Where officers of the law have incited persons to commit a crime and lured them on to its consummation for the purpose of arresting them upon its commission, the law will not allow a verdict of guilty. If you are satisfied that prior to the commission of the acts alleged in the indictment, if you find such acts were committed by the defendants, the defendants did not conceive and hold any intention of committing the acts alleged in the indictment but that Charles S. Davis incited and by suasion and representations lured them to commit such criminal acts in order to entrap, arrest and prosecute them therefor, and that said defendants would not otherwise have committed such acts in violation of law, then the defendants are entitled to a verdict of not guilty. Defendants are not required to prove entrapment beyond a reasonable doubt, or even by preponderance of the evidence. It is sufficient to justify an acquittal if the evidence upon that point raises in your minds a reasonable doubt as to whether or not defendants were entrapped. If, however, you find that prior to the commission of the acts alleged in the indictment, if you find such acts were so committed as alleged, the defendants conceived the criminal design and purpose to commit the crime of conspiracy as alleged in the indictment, and that Charles S. Davis merely afforded to such defendants an opportunity to carry out a preconceived resolution or purpose on their part to commit such acts, then the defense of entrapment does not apply to or in this case. If you find from the evidence that the defendants were willing to commit the offense charged in the indictment and did so and would have done so whether or not the opportunity was offered or suggested or afforded to them by Charles S. Davis (it being lawful for said Charles S. Davis to afford defendants an opportunity to commit crimes which they were willing to commit and were about to commit), then you cannot acquit the defendants on the ground of entrapment, notwithstanding such suggestions made or opportunities afforded by Charles S. Davis, if any."

The defendant's contention in this respect is that the six instructions requested by him would have presented to the jury for determination the broader question whether *any* official of the government had enticed, persuaded, lured or entrapped the defendant into committing the offense charged against him, whereas the instruction which the presiding judge prepared and gave to the jury presented the narrower question of whether Mr. Davis, the city and county attorney, had so incited, persuaded, lured or entrapped the defendant. There was ample evidence tending to show that the defendant was entrapped by the city and county attorney, but there was also ample evidence tending to show that the thought and the criminal design had originated in the defendant's mind and that the city and county attorney had merely furnished him with an opportunity to commit the crime. That issue was one of the credibility of witnesses and was submitted to the jury for its sole determination. The testimony which is relied upon by the defendant on the present appeal as tending to show that the defendant was likewise entrapped by Mr. Cassidy, who at that time was at the head of the detective department of the City and County of Honolulu, or by Mr. Scotty Schumann (not a government official, but claimed to be an agent of the city and county attorney), is set forth at length in the defendant's brief. We are satisfied that this testimony cannot have the effect claimed for it and that there was at the trial no evidence whatever tending to show that there was any entrapment of the defendant by either Mr. Cassidy or Mr. Schumann. On the contrary the defendant's own testimony and his sole testimony on that point was that it was he, the defendant, who sought Cassidy and Schumann, in turn, and proposed to them a violation of the law in the respects under consideration and that he did this after many discussions of the subject between him and the city

and county attorney. The defendant's testimony, relied upon in this connection, was susceptible of being understood as indicating that Cassidy and Schumann gave some measure of encouragement to the defendant, but it is not susceptible of the construction that they, or either of them, devised the nefarious scheme or instilled it into the mind of the defendant. Upon all of the testimony of the defendant and that of the city and county attorney there was an issue as to which of these two originated the design and persuaded the other, but upon all the testimony there was room for the one finding only, that when the defendant sought Cassidy and Schumann he, the defendant, already entertained the thought and the design and the criminal intent.

The one instruction given by the court on this subject sufficiently presented the only issue which upon the evidence was involved.

It is assigned as error that the court refused to give an instruction requiring the jury to find the defendant not guilty under the third count of the indictment. This raises the same question, already considered, of the sufficiency of the third count and is disposed of by the ruling on that subject.

The defendant requested the court to give instruction No. 42, reading as follows: "Each juror must be satisfied beyond a reasonable doubt that the defendants are guilty as charged, before he can, under his oath, consent to a verdict of conviction. If any one of the jurors, after having duly considered all the evidence, and after having consulted with his fellow jurymen, entertains such reasonable doubt, it will be the duty of such juror not to consent to a verdict of guilty." There was no error in this respect for the court gave the defendant's requested instruction No. 33, which was in precisely the same language, with the exception of two very slight verbal differences that were

immaterial. Another assignment of error is that the court refused to give defendant's requested instruction No. 25, reading as follows: "If after consideration of the whole case, any juror should entertain a reasonable doubt of the guilt of the defendants, it is the duty of such juror so entertaining such doubt not to vote for a verdict of guilty, nor to be influenced in so voting for the single reason that a majority of the jury should be in favor of a verdict of guilty." In view of the fact that the court gave defendant's instruction No. 33, quoted above, there was no reversible error in this refusal.

The refusal of the court to give defendant's requested instruction No. 41 is assigned as error. That instruction read: "The phrase 'prevent or obstruct the course of justice' found in R. L. H. 1925, S. 4312, means impeding or obstructing those who seek justice in a court or those who have duties or powers of administering justice therein." The ruling on the demurrer disposes of this assignment.

At the request of the prosecution and against the objection of the defendant the court gave the following instructions numbered six and seven:

No. 6. "It is the duty of the sheriff and the city and county attorney of the City and County of Honolulu to arrest and cause the arrest and to prosecute and cause the prosecution of persons unlawfully conducting and engaged in gambling and gambling games, prostitution and houses of prostitution, bootlegging and violations of the National Prohibition Act within the City and County of Honolulu. These matters constitute a part of the official capacities and acts of the city and county attorney and the sheriff of the City and County of Honolulu and are matters which might and would by law come before said sheriff and said city and county attorney."

No. 7. "An agreement to protect from arrest and prosecution persons unlawfully conducting and engaged in gambling and gambling games, prostitution and houses of prostitution, bootlegging and violations of the National

Prohibition Act in the City and County of Honolulu by means of collecting money and paying the same over to the sheriff and the city and county attorney would be a conspiracy to prevent, obstruct, defeat and pervert the course of justice."

The complaint against these two instructions is that the court therein informed the jury that it was the duty of the sheriff to make arrests and of the county attorney to prosecute for violations of the National Prohibition Act in the City and County of Honolulu. The Act of Congress of November 23, 1921 (42 U. S. Stat. L., ch. 134, Sec. 3), supplementing the National Prohibition Act, provides that "this Act and the National Prohibition Act shall apply not only to the United States but to all territory subject to its jurisdiction, including the Territory of Hawaii and the Virgin Islands; and jurisdiction is conferred on the courts of the Territory of Hawaii and the Virgin Islands to enforce this Act and the National Prohibition Act in such Territory and Islands." Under this section this court has held (*In re Abreu*, 27 Haw. 237) that "the district courts of Hawaii have jurisdiction of criminal cases in which the defendants are charged with a first offense of manufacturing intoxicating liquor contrary to the provisions of the National Prohibition Act;" and that (*Territory* v. *Kitahara*, 27 Haw. 397) "a circuit court of this Territory has jurisdiction on indictments found by a grand jury drawn and impanelled within the circuit for offenses involving violations of the National Prohibition Act." In so holding it was said in the first of these two cases: "In conferring jurisdiction over violations of the Prohibition Act on 'the courts of the Territory of Hawaii,' Congress must clearly have intended that that jurisdiction should be exercised by the appropriate courts of the Territory in the usual manner in which similar jurisdiction is exercised by them and with the machinery at their

command. No new machinery for the purpose was created by the Act of Congress." In our opinion it further follows, as a necessary inference from the provisions of section three just quoted, that it was intended by Congress that the officers in Hawaii ordinarily charged with the power and the duty to make arrests and to conduct prosecutions for violations of laws in force in the Territory should have the power and the duty to make arrests and to conduct prosecutions for violations of the Prohibition Act and to take the cases before the territorial courts which by the Prohibition Act were expressly invested with jurisdiction to hear such cases. At the date of the passage of the Prohibition Act Hawaii already had a district court of the United States with jurisdiction to enforce all Federal laws and to try persons charged with violations of United States criminal statutes. There already was in existence here a court to which Federal arresting and prosecuting officers could take such cases for hearing and determination. It was evidently the purpose of Congress to invest the whole territorial system of law enforcement agencies with power to arrest, prosecute and try for violations of this new Federal law. . To hold that it is not within the power and that it is not the duty of territorial police officers and prosecuting officials to arrest and to prosecute for violations of the Prohibition Act and its amendments would be to render purposeless the provision of section three conferring jurisdiction on territorial courts.

*Gambino* v. *United States,* 275 U. S. 310, is not an authority to the contrary. In that case Gambino had been arrested by a New York state trooper near the Canadian boundary. His automobile was searched without a warrant and intoxicating liquor found therein was seized. The liquor was at the trial admitted as evidence against the defendant. The Supreme Court of the United States

held that the evidence was improperly admitted because it had been illegally seized. It said that the troopers "were not at the time of the arrest and seizure agents of the United States;" but, although no Federal officer was present or had in any way requested or authorized the seizure, the court took judicial notice of the fact that the troopers "believed that they were required by law to aid in enforcing the National Prohibition Act; and that they made this arrest, search and seizure, in the performance of that supposed duty, solely for the purpose of aiding in the federal prosecution." It held that while "the troopers were not shown to have acted under the directions of the federal officials in making the arrest and seizure," nevertheless "the rights guaranteed by the Fourth and Fifth Amendments may be invaded as effectively by such cooperation" (as had been intended by the troopers), "as by the state officers' acting under direction of the federal officials." The prosecution thereupon instituted by the Federal authorities was, as conducted, in effect a ratification of the arrest, search and seizure made by the troopers on behalf of the United States. It excluded the evidence because it had been illegally seized by officers in truth intending to cooperate thereby with the Federal officers who had the power of making arrests. And the court very carefully stated that it had "no occasion to enquire" whether "the laws of the state actually imposed upon the troopers the duty of aiding the federal officials in the enforcement of the National Prohibition Act." The precise point raised in the case at bar was not involved or decided in that case.

All the remaining assignments which have been argued either orally or in the briefs have been examined. We find no reversible error.

The judgment is affirmed.

*J. B. Lightfoot* (also on the briefs) for plaintiff in error.

*W. T. O'Reilly,* Deputy City and County Attorney (*J. F. Gilliland,* City and County Attorney, with him on the briefs), for the Territory.