### No. 26177

## The People of the State of Colorado v. Dewayne Lee Dinkel

(541 P.2d 898)

Decided October 6, 1975.

John P. Moore, Attorney General, John E. Bush, Deputy, John Stephen Phillips, Assistant, for plaintiff-appellee.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Dorian E. Welch, Deputy, Norman R. Mueller, Deputy, for defendant-appellant.

*In Department.*

Opinion by MR. JUSTICE KELLEY.

This is an appeal from a conviction for dispensing dangerous drugs. 1969 Perm. Supp., C.R.S. 1963, 48-8-2.[1] We affirm.

On April 13, 1973, at approximately 2:00 p.m., Harry S. Sloan, an undercover narcotics officer for the Greeley police department, visited the parking lot of the Poudre High School in Fort Collins in the course of a narcotics investigation. Officer Sloan was accompanied by another undercover agent and two confidential informants. At the parking lot, one of the informants identified the defendant, Dewayne Lee Dinkel, as a contact. On the basis of this information, Officer Sloan approached the defendant and inquired about the possibility of purchasing a quantity of marijuana and amphetamines.

At the defendant's invitation, Officer Sloan accompanied him to a house in Greeley where the officer gave the defendant thirty dollars with which to purchase the contraband. The defendant entered the dwelling and returned after a few minutes to inform Officer Sloan that only amphetamines were available for purchase. The officer indicated his interest in purchasing the drugs, at which time the defendant re-entered the residence for the purpose of procuring the substance and completing the purchase. The defendant returned shortly with two bags containing amphetamine tablets which he handed to Officer Sloan. The officer and the defendant then drove back to the high school parking lot.

## I.

The defendant's first assignment of error is based on the trial court's refusal to give the following tendered instruction to the jury:

"If you believe that Agent Sloan asked defendant to make a purchase of a dangerous drug for him and thereupon defendant undertook to act in Agent Sloan's behalf rather than his own, and in so doing purchased the drug from a third person with whom defendant was not associated in selling and thereafter delivered the dangerous drug to Agent Sloan, then you should find the defendant not guilty of the charge."

This instruction is premised upon the "procuring agent" theory which was apparently first advanced in *United States v. Sawyer*, 210 F.2d 169 (3d Cir. 1954). In that case the defendant was convicted of unlawful sale of heroin, and the Third Circuit reversed the conviction, holding that if the jury

". . . believed that the federal agent asked the defendant to get some heroin for him and thereupon the defendant undertook to act in the prospective purchaser's behalf rather than his own, and in so doing purchased the drug from a third person with whom he was not associated in selling, and thereafter delivered it to the buyer, the defendant would not be a seller and could not be convicted under this indictment."

The federal law under which *Sawyer* was decided prohibited the "sale" of certain drugs. However, since the *Sawyer* decision, federal statu-

---

[1]Now section 12-22-404, C.R.S. 1973.

tory law has been changed by Congress. The present federal law prohibits the "distribution" of a controlled substance. 21 U.S.C. §· 841(a). "Distribution" is defined to mean "delivery," and "delivery" is defined as an "actual, constructive, or attempted transfer of a controlled substance, *whether or not there exists an agency relationship.*" 21 U.S.C. § 802 (emphasis added). The federal circuit courts have held that the change in the federal statute, which broadened the prohibited conduct from mere "sale" to "distribution," has the effect of precluding the use of the "procuring agent" defense. *United States v. Pierce,* 498 F.2d 712 (D.C. Cir. 1974); *United States v. Redwood,* 492 F.2d 216 (3d Cir. 1974); *United States v. Masullo,* 489 F.2d 217 (2d Cir. 1973); *United States v. Hernandez,* 480 F.2d 1044 (9th Cir. 1973); *United States v. Workopich,* 479 F.2d 1142 (5th Cir. 1973).

The defendant contends that the above cited federal cases are not applicable to the present case because the federal statute manifests congressional intent to specifically include a procuring agent's conduct, which is not present in the Colorado statute.

■ The defendant was charged and convicted of "unlawfully dispensing" a dangerous drug. 1969 Perm. Supp., C.R.S. 1963, 48-8-2(1)(a).[2] The legislature has defined "dispense" as "sale, delivery, giving away, or supplying in any other manner, or otherwise disposing of, to another person." 1969 Perm. Supp., C.R.S. 1963, 48-8-1(15).[3] Thus, the Colorado legislature has sought to prohibit not only the sale of dangerous drugs but also every other type of conduct related to the unauthorized traffic in drugs.

■ The breadth of coverage of the Colorado statute is analogous to the present federal statute. We therefore hold that the procuring agent theory is not applicable to the present case where the defendant was convicted of dispensing a dangerous drug rather than selling the same. In so holding, we draw upon the reasoning of several other jurisdictions which have analyzed the theory in the context of a statute, such as ours, which proscribed the dispensing or distribution of a controlled substance. *E.g., State v. Russell,* 108 Ariz. 549, 503 P.2d 377 (1972); *People v. Grijalva,* 48 Cal.App. 2d 690, 121 P.2d 32 (1941); *Granville v. State,* 287 A.2d 652 (Del. 1972); *People v. Shannon,* 15 Ill. 2d 494, 155 N.E. 2d 578 (1959); *Boone v. State,* 291 So. 2d 182 (Miss. 1974); *State v. Weissmn,* 73 N.J. Super. 274, 179 A.2d 748 (1962); *State v. Koppenhafer,* 11 Ore. App. 412, 502 P.2d 610 (1972); *Higby v. State,* 485 P.2d 380 (Wyo. 1971).

Confronted with a similar factual situation under a statute which spoke primarily in terms of sale, the Maine Supreme Court reasoned in *State v. Allen,* 292 A.2d 167 (Me. 1972), that:

---

[2]Now section 12-22-404(1)(a), C.R.S. 1973.
[3]Now section 12-22-403(6), C.R.S. 1973.

". . . It is clear that the legislative design in Maine is to eradicate the unauthorized traffic in narcotics. To carry out that manifest objective the term "sale" was legislatively expanded to reach every step or device in the scheme of illegal distribution. The Legislature further intended the Act to have the broadest scope to facilitate its enforcement. It is a known fact that drug traffickers maintain clandestine operations carefully guarded from official detection. Illegal transfers usually do not take place under the eyes of the police. The proscription of the transfer, without more, facilitates the enforcement of the law against traffickers by eliminating, as the statute purports to accomplish, the burden of proving that the transfer was not being made as agent of the buyer. If this loophole through which the defendant attempts to justify his participation in the drug traffic is permitted to exist in this comprehensive legislation, the purpose of the Act would be severely frustrated. . . ."

We find this reasoning even more compelling to the situation in this jurisdiction, which is controlled by a broader legislative mandate.

## II.

■ The defendant has also assigned error to the trial court's failure to instruct the jury on the lesser included offense of possession of a dangerous drug. 1969 Perm. Supp., C.R.S. 1963, 48-8-2(5). The validity of this contention is dependent upon the success of the defendant's defense to the charge in the information. As provided by section 18-1-408(6), C.R.S. 1973:

"The court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."

Our prior discussion and disposition of the defendant's "procuring agent" theory demonstrates in this case the lack of a "rational basis for acquitting the defendant of the offense charged. . . ." Section 18-1-408(6), C.R.S. 1973; *Ortega v. People*, 178 Colo. 419, 498 P.2d 1121 (1972); *People v. Futamata*, 140 Colo. 233, 343 P.2d 1058 (1959). The defendant was either guilty of *dispensing* amphetamines, a dangerous drug, or nothing. *See Ortega v. People, supra.*

The judgment is affirmed.

MR. JUSTICE DAY, MR. JUSTICE LEE and MR. JUSTICE ERICKSON concur.