STATE OF HAWAII, Plaintiff-Appellee, *v.* BRANT NORMAN KELSEY, Defendant-Appellant

NO. 6015

JULY 25, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR AND KIDWELL, JJ.

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Brant Norman Kelsey (hereinafter appellant), was found guilty by a jury of the offense of promoting a dangerous drug in the second degree in violation of Section 1242(1) (c) of the Hawaii Penal Code, as enacted by Act 9, Session Laws of Hawaii 1972, hereinafter referred to as the Code. He was thereafter sentenced by the trial court to imprisonment in the Hawaii State Prison for ten years. We affirm the judgment and sentence.

Appellant contends that the trial court erred when it denied appellant's motion for judgment of acquittal made at the close of the presentation of all the evidence in the case. In this connection, appellant based his motion for acquittal on three separate grounds: 1) that the state had failed to present any evidence to show appellant was not licensed to deal in drugs; 2) that appellant was entrapped as a matter of law; and 3) that appellant was a procuring agent for the undercover police officer and was therefore immune from prosecution. In refer-

ence to appellant's grounds 2 and 3, he further contends that the trial court erred in instructing the jury over his objection that the burden of proving entrapment was by preponderance of the evidence and that burden was on appellant; and that it also erred when it refused to give over appellant's objection his requested jury instruction No. 3, relating to his defense that he was a procuring agent.

We have carefully reviewed the record in the instant case, and we reject the appellant's contention that no evidence was presented to show that appellant was not authorized by law to distribute cocaine. Among other things, the transcript shows that in his own direct testimony, appellant testified that he is not a cocaine dealer, and further on cross examination he admitted that he is not a distributor of drugs. In *State v. Tamanaha*, 46 Haw. 245, 377 P.2d 688 (1962), we are told that the evidence adduced in the trial court must be considered in its strongest light for the state by an appellate court in passing on its legal sufficiency to support a conviction. Reviewing the transcript in that light, we hold that it contains substantial evidence, albeit circumstantial, from which justifiable inferences of fact may be drawn on the factual issue of unlawfulness, which would render this a question for the consideration of the jury. *State v. Laurie*, 56 Haw. 664, 548 P.2d 271 (1976); *State v. Iaukea*, 56 Haw. 343, 537 P.2d 724 (1976); *State v. Cannon*, 56 Haw. 161, 532 P.2d 391 (1975); *State v. Kahalewai*, 55 Haw. 127, 516 P.2d 336 (1973); *State v. Rocker*, 52 Haw. 336, 475 P.2d 684 (1970). Moreover, we agree with the trial court's decision in denying appellant's motion for judgment of acquittal in that a reasonable mind might fairly conclude guilt beyond a reasonable doubt based upon the totality of such evidence.

The appellant admits in his opening brief that the view of the U.S. Supreme Court is that entrapment is a jury question, unless the evidence is undisputed and so clear that it presents a legal question as a matter of law. *Sherman v. United States*, 356 U.S. 369 (1958). We agree with this view of entrapment. However, based on this record, we do not have a situation where the evidence is undisputed. Rather the evidence is in sharp conflict, the prosecution's case not disclosing any evi-

dence of entrapment, while the appellant's showing that defense. This is a clear case where the question of entrapment must be determined by a jury, who, in arriving at its verdict, must determine the credibility of the witnesses and the weight of the evidence. We, therefore, conclude that the motion for judgment of acquittal, based on entrapment as a matter of law, was properly denied, and the trial court properly allowed this question to go to the jury. *Masciale v. United States,* 356 U.S. 386 (1958); *People v. Bucher,* 182 Colo. 211, 511 P.2d 895 (1973).

Appellant further contends that the trial court committed prejudicial error when it instructed the jury over appellant's objection that the burden of proof in the entrapment issue was on the appellant and that appellant must meet this burden by a preponderance of the evidence.[1]

Appellant argues in this regard that after some credible evidence of entrapment is presented, the burden should be on the state to show that appellant was not entrapped, beyond a reasonable doubt. We agree with appellant that this view was accepted as the law in this jurisdiction until 1972. *Territory v.*

---

[1] The instruction given by the court to the jury over appellant's objection read:

The defense of entrapment, if proven, entitles a defendant to an acquittal even though the prosecution has proven the commission of an offense. While the prosecution must prove the commission of the offense, it is the defendant who has the burden of proving the defense of entrapment. However, while the prosecution must prove its case beyond a reasonable doubt, the burden of defendant to prove entrapment is only to prove it by a preponderance of the evidence. This means that the defendant must prove that it was more likely than not, or more probable than not, that entrapment took place.

Entrapment occurs when a police officer induces or encourages the commission of an offense through the use of methods of persuasion which create a substantial risk that the offense would be committed by persons other than those who are ready to commit it.

· Applied to this case, the issue on entrapment involves two questions: One, was the defendant induced or encouraged by the police officer to make him the sale of cocaine? Two, if so, was the conduct of the police officer in inducing or encouraging the defendant to make the sale such that it would probably have gotten a sale even from a person who was not about ready to sell cocaine? If, based on the preponderance of the evidence, your answer to both of these questions is "yes", then the defense of entrapment has been proven, and it is your duty to acquit. And if your answer to either of the questions is "no", then the defense of entrapment has not been proven.

*Achuck,* 31 Haw. 474 (1930). The provisions of the Code went into effect on January 1, 1973, and the legislative mandate set forth in Sections 115 and 237 of the Code with respect to the defense of entrapment is applicable to the facts involved herein. *United States v. Russell,* 411 U.S. 423 (1973).[2] Section 237 of the Code states that it is an affirmative defense when the defendant asserts that he engaged in the prohibited conduct or caused the prohibited result because he was induced or encouraged to do so by a law enforcement officer, who, for the purpose of obtaining evidence of the commission of an offense, either knowingly made false representations designed to induce the belief that such conduct or result was not prohibited, or employed methods of persuasion or inducement which created a substantial risk that the offense would be committed by persons other than those who are ready to commit it. Section 115(2) (b) of the Code states: "If the defense is an affirmative defense, the defendant is entitled to an acquittal if the trier of fact finds that the evidence, when considered in light of any contrary prosecution evidence, proves by a preponderance of the evidence the specified fact or facts which negative penal liability." The burden of proving entrapment is now on the defendant, and he must prove this issue by a preponderance of the evidence. The instruction given to the jury was pursuant to these sections of the Code.

Appellant further argues that these sections, which require appellant to show entrapment by preponderance of the evidence, have shifted the burden of proof of an essential element of the crime from the state to appellant, and, to this extent, these statutes are unconstitutional because they contravene the requirements of due process. It is appellant's position that when entrapment is raised as a defense, there is injected into the case an additional material element of non-entrapment, which must be proved beyond a reasonable doubt by the state. However, appellant reasons, because the

---

[2] It was stated in this case that: "Since the defense is not of a constitutional dimension, Congress may address itself to the question and adopt any substantive definition of the defense that it may find desirable." 411 U.S. 433.

Code requires the appellant to prove entrapment by a preponderance of the evidence, the state is relieved from proving non-entrapment by evidence beyond a reasonable doubt.

In the case at bar, the state is required to prove beyond a reasonable doubt all of the elements of the offense of promoting a dangerous drug in the second degree, including the requisite state of mind of appellant. Section 114 of the Code; *see* Wharton's Criminal Procedure, 12th ed., Vol. IV, § 540. We note that an instruction to this effect was given to the jury by agreement of the prosecution and appellant. We are unable to discern that sections 115 and 237 in any way lessen the requisite number of the elements to be proven by the state or the degree or quantum of the proof because the accused pleads the defense of entrapment. Such a plea simply allows the accused to present any and all circumstances or evidence surrounding the alleged commission of the offense. And, if the circumstances or evidence should convince the jury by a preponderance of the evidence that the accused was entrapped by the activities of the undercover police officer, then he is entitled to an acquittal. We do not think that these sections of the Code shift to the appellant the burden of proof as to any element of the offense with which the appellant was charged. The requirement that the accused prove by a preponderance of the evidence an affirmative defense pleaded by him would not have such an effect, and we view that there is no constitutional due process violation as contended by appellant. *People v. Valverde*, 246 Cal. App.2d 318, 54 Cal. Rptr. 528 (1966); *Lo Buono v. United States*, 454 F.2d 731 (9th Cir. 1971), *cf. Leland v. Oregon*, 343 U.S. 790 (1952).

Appellant further contends that he was entitled to a judgment of acquittal as a matter of law under the evidence adduced in this case because it showed that appellant had acted not for himself, but for the undercover police officer in purchasing the cocaine. Appellant invokes, as a defense, the theory of the procuring agent.

As we indicated earlier in this opinion, the Hawaii legislature in 1972 enacted Act 9, known as the Hawaii Penal Code, which undertook a massive and wholesale revision of the existing criminal laws in this jurisdiction. *See* Act 9,

S.L.H. 1972. This Code went into effect January 1, 1973. The last Part IV of Chapter 12 of the Code describes offenses related to drugs and intoxicating compounds. Part IV of Chapter 12 of the Code drastically amended the law on drug traffic as it was formerly contained in Chapter 329 HRS.

We have not expressed any opinion as to whether or not the procuring agent defense can be utilized in the sale of drugs proscribed under the former statute.[3] However, we do now hold that this defense would be inapplicable against a charge of knowingly and unlawfully distributing a dangerous drug in violation of Section 1242(1) (c) of the Code. *People v. Dinkel*, —— Colo. ——, 541 P.2d 898 (1975). In fact the provisions of the Code with respect to offenses related to drugs and intoxicating compounds refer to the schedule of substances described in the new Chapter 329, which is entitled, "Uniform Controlled Substances Act." Act 10, SLH 1972. Thus, we conclude that our statutory law on drug offenses is in this respect in accord with the federal law. Like Colorado and other jurisdictions, we follow the majority of the federal circuits and reject the procuring agency defense. *People v. Dinkel, supra.*

The trial court, therefore, properly refused to give appellant's instruction on the procuring agent rule after it correctly denied the appellant's motion for judgment on the basis of immunity as a procuring agent.

Affirmed.

*Patricia K. O'Toole,* Deputy Public Defender, for defendant-appellant.

*Paul H. Toyozaki,* Deputy Prosecuting Attorney, for plaintiff-appellee.

### DISSENTING OPINION OF KIDWELL, J.

I disagree with the conclusion of the majority that the record contains circumstantial evidence which satisfies the

---

[3] HRS Chapter 329, as it existed in 1972.

State's burden of proving beyond a reasonable doubt that Appellant "unlawfully" distributed cocaine.

The indictment under which Appellant was tried charged that he "did knowingly and unlawfully distribute the dangerous drug cocaine." in violation of HRS § 712-1242(1) (c) as it read before its amendment in 1975. The statute then read:

(1) A person commits the offense of promoting a dangerous drug in the second degree if he knowingly and unlawfully:

\* \* \* \*

(c) Distributes any dangerous drug in any amount.

The following relevant definitions were contained in § 712-1240:

"Unlawfully" was defined as follows:

(13) "Unlawfully" means:
(a) To possess or distribute a Schedule I, II, III, IV or V substance, a marijuana concentrate, marijuana, or intoxicating compound, when not authorized by law to do so by an apothecary, physician, dentist, podiatrist, practitioner, or veterinarian;

"Practitioner" was defined as follows:

(10) "Practitioner" means:
(a) A physician, dentist, veterinarian, scientific investigator, or other person licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance in the course of professional practice or research in this State.
(b) A pharmacy, hospital, or other institution licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance in the course of professional practice or research in this State.

At the close of all of the evidence, Appellant moved for a judgment of acquittal on the ground that the State had failed to introduce any evidence that Appellant distributed the sub-

stance unlawfully, in that there was no showing that he was not licensed. The trial court indicated doubt but denied the motion. The court first construed the statute so as to substitute "as" for "by", and thus to read "authorized by law to do so *as* an apothecary", etc. The court then (apparently) held that Appellant's testimony that he was employed in a small establishment engaged in the sale of sea shells and similar articles enabled the jury to conclude that he was not an apothecary, physician, dentist, podiatrist, practitioner or veterinarian.

It seems too clear for argument that the construction which the trial court placed upon the statute must be rejected and that the statute must be read according to its text.[1] Doubtless, distribution *as* an apothecary, etc. would be embraced within the exclusion from unlawful distribution. However, the State has not suggested in this appeal that authorization *by* a member of the named professional categories would not also constitute a defense. The State's entire argument on this point, as contained in its brief, is as follows:

> As defined above, the State was compelled to prove a negative without being able to compel the accused to

---

[1] No matter how absurd the statute might appear to be, neither the trial court nor this court may reword a statute so as to make criminal what the statute excludes. The words "when not authorized by law to do so by" are not free from difficulty, but I consider their fair intendment to be that a person (such as a salesman, assistant or other agent), who has been authorized by one who is licensed or otherwise permitted to distribute a drug, does not unlawfully distribute the drug when disposing of it as so authorized. The substitution of "as" for the second "by" in the quoted phrase, as was done by the trial court and in the majority opinion, would deprive this large class of affected persons of the protection which the statute seems clearly to intend. Accordingly, I would test the circumstantial evidence in this case by its tendency to prove that Appellant was not authorized *by* a member of the designated categories to distribute the drug to the undercover officer, rather than by its tendency to prove that he was not authorized *as* a member of the designated categories. Nevertheless, if the statute were given the construction which the trial court and the majority opinion have adopted, I would remain unable to find, in the circumstances disclosed in the record, evidence from which a jury could find beyond a reasonable doubt that Appellant was not a member of a class which included any "person licensed, registered, or otherwise permitted to distribute, dispense, conduct research with respect to or administer a controlled substance in the course of professional practice or research" (§ 1240 (10)). To so conclude, on this record, would have the effect of shifting to the Appellant the burden of proving that the distribution was lawful. However, I do not see this question as before this court.

testify. In reality, to prove "unlawfulness" was a practical impossibility because the State would have to show that the accused was not lawfully authorized to distribute drugs or narcotics by an enumerated professional person. In order to show "unlawfulness," the State would be required literally to call upon hundreds of persons to inquire whether he had lawfully authorized the accused to possess or distribute a drug or narcotic. This is not the intent of the *Hawaii Penal Code*. Therefore, the only conclusion is that the word "unlawfully" is mere surplusage and was not required to be shown by the State in its case against Defendant. Hence, the trial court did not commit error in denying Defendant's motion for judgment of acquittal.

I agree with the majority that the rather startling contention on which the State seeks to affirm the conviction is without merit and that the question before us is whether the trial judge was correct in submitting the question of unlawfulness to the jury.[2] My disagreement is with the majority's finding, in which they showed more ingenuity in reading the record than did counsel for the State, that proof of unlawfulness was not only possible but had been accomplished by the State in this case. The essential facts are not substantially in dispute.

At the time of the transaction, Appellant was and had for probably seven months been employed by Sea Treasures, Unlimited, a firm which manufactured a product having something to do with shells. The establishment was located at 2869 Oahu Avenue, on two and a half acres of land, in Manoa.

---

[2] Appellant's counsel argued in support of the motion to acquit that the State had not shown that Appellant was not licensed to distribute cocaine, and subsequently consented to an instruction to the effect that the distribution was "unlawful unless authorized to do so as a distributor registered with the State Department of Health." In view of the trial court's announcement of its construction of the statute, which made it evident that the court had considered and rejected the argument that lack of authorization by a licensed distributor was required to be shown by the State, it was not necessary for Appellant's counsel to reiterate the argument to preserve it for our consideration. The consent to the instruction came later and has no bearing on the motion to acquit.

Appellant lived on these premises and managed the inventory, but was not one of the owners of the firm. Appellant earned about $50 a week. Prior to this employment, Appellant had worked as a bartender at two establishments and had his own furniture laminating businesses. Appellant testified that he had "done a great many things as far as employment are concerned." He had been in Hawaii for 13 years and attended the University of Hawaii for half a semester when he first graduated from high school. He spent a great deal of his time playing frisbee in Kapiolani Park.

Appellant became acquainted with an undercover police officer in early 1975 and engaged in backgammon games with him, playing in a step van which Appellant parked adjacent to Kapiolani Park. During the backgammon games, Appellant asked the officer if he wanted to buy some "coke" for $50 per gram. When the officer said he would like to do so, around seven o'clock in the evening, the two drove in the officer's car to several locations looking for a man identified by Appellant variously as Don or Ed. After stopping at a Jack-in-the-Box restaurant in Waikiki and an apartment house on Wilder Avenue, and after Appellant made a phone call, they stopped near Ohua Avenue in Waikiki. Appellant received $100 from the officer, walked up Ohua Avenue and returned in a few minutes with a glassine bag containing cocaine, which he told the officer had cost $60. Appellant asked the officer if he still wanted the cocaine at that price. Upon the officer's acceptance, Appellant gave him $40 in change from the $100.

The officer testified that Appellant informed him that the man with the cocaine was at his girl friend's house. Appellant testified that he had been told by "Ed" that he was living in the Kalamalama Apartments and that Appellant purchased the cocaine there. The officer testified that Appellant asked the officer to wait while he went for the cocaine, saying that he wasn't too sure whether or not his "man" would want him to bring the officer with him, and that Appellant used the words "man" and "connection", which the officer had heard as part of the vernacular of drug traffickers. The officer also testified that, after the described transaction, he several

times requested Appellant to obtain drugs and on one occasion Appellant agreed to do so, but was unsuccessful.

Appellant admitted obtaining the cocaine for the officer in the described transaction but denied making any other attempts to do so. Appellant's testimony disagreed with that of the officer in some details and was subject to some confusion and evasion. Appellant denied that he had initiated the transaction and claimed that he had agreed to obtain the cocaine after much urging and after he had become concerned and frightened by the officer's appearance. Appellant testified that he was not a doctor and had never gotten drugs for anybody before when they were in that condition.

As we said in *State v. Laurie,* 56 Haw. 664, 669, 548 P.2d 271, 275 (1976):

> It is well settled that to deny a motion to acquit there must be sufficient evidence to support a prima facie case; the evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the fact finder to determine credibility, weigh the evidence and draw justifiable inferences of fact. *State v. Cannon,* 56 Haw. 161, 163, 532 P.2d 391, 394 (1975); *State v. Rocker,* 52 Haw. 336, 345-46, 475 P.2d 684, 690 (1970). This test applies to both direct testimony and circumstantial evidence.

When this test is applied to circumstantial evidence, it is not enough that the circumstances permit an inference of guilt. As we held in *State v. Benton,* 56 Haw. 409, 538 P.2d 1206 (1975), if an inference of fact which establishes innocence may also, within reason, be drawn from the circumstances a motion to acquit must be granted. A typical statement of the rule is found in *Commonwealth v. Burke,* 339 Mass. 521, 527, 159 N.E. 2d 856, 860 (1959): "[T]he circumstances must be such as to produce a moral certainty of guilt, and to exclude any other reasonable hypothesis". This is, of course, only another way of saying that if there is a reasonable inference of innocence which a reasonable mind could draw from the circumstantial evidence, a reasonable doubt of guilt necessarily exists.

It is somewhat difficult to conceptualize and articulate the application of this principle where the evidentiary problem involves the establishment of a negative fact. Here the statute places upon the State the burden of proving beyond a reasonable doubt that Appellant was *not* authorized to distribute the drug by an apothecary, physician, dentist, podiatrist, veterinarian or practitioner, which term is defined as meaning, in addition to persons already categorized, a scientific investigator or other person, or a pharmacy, hospital or other institution, licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to or to administer a controlled substance in the course of professional practice or research in this State. The State might carry this burden by proof that Appellant was not authorized by anyone to distribute the drug, or by proof that anyone by whom he was authorized was not within the statutory categories.

On the first question, whether Appellant was authorized by anyone to distribute the drug, the circumstantial evidence rather strongly suggests that Appellant acted as the agent and with the authority of the mysterious "Don" or "Ed" from whom the drug was obtained. Appellant left the officer with $100 of the officer's funds and with an authorization to purchase the drug for $50. Appellant returned with the drug and informed the officer that he could have it for $60. Although Appellant had delivered $60 of the officer's funds to the supplier, there is a strong implication that Appellant was acting for the supplier in offering the drug to the officer and was in a position to return the drug and regain possession of the officer's funds if the increased price was not acceptable to the officer. I would conclude that the circumstantial evidence permitted a reasonable inference that Appellant had been authorized by his supplier to distribute the drug and, consequently, that the State could sustain its burden only by showing that the supplier was not in one of the statutory categories.

In turning to this aspect of the evidentiary problem, it is important to point out an aspect of the analysis which is present only because the evidence is offered to prove a negative fact. Proof is doubtless not required to enable the jury to recognize that most persons who might have been present in

Waikiki at the time of this transaction were not within the categories described in the statute. Thus, the mere fact that the supplier was unidentified and undescribed was enough to create a possibility and to permit a logical inference that he was not an apothecary, physician, dentist, or in any other described category. But to accept merely this inference as sufficient proof would be to hold that no proof is necessary to establish a fact which is an exception to the ordinary condition. The legislature placed the burden upon the State of proving beyond a reasonable doubt that Appellant's supplier was not one of the excepted persons described in the statute. To permit a finding to that effect on no stronger showing than the inference that Appellant's supplier would not ordinarily have been within the exceptions would effectively shift the burden of proof to the Appellant. It follows, I believe, that the circumstances must substantially strengthen the logical inference which denies the existence of an exception from the ordinary condition, in order to sustain the State's burden in this case.

The record provides meager information about the mysterious supplier. There is evidence that the supplier had told Appellant that he was prepared to sell cocaine, that he could perhaps be found at the Jack-in-the-Box restaurant, that he had a house on Wilder Avenue and lived with a girl friend in a house or apartment in Waikiki, and that he supplied an envelope of cocaine for a price of $60. I am aware of no other circumstances which cast any light on the question whether the supplier was an apothecary, physician, dentist, podiatrist, veterinarian or a scientific investigator or other person licensed, registered or otherwise permitted to distribute, dispense, conduct research with respect to or administer a controlled substance in the course of professional practice or research in this State. The fact that the supplier may have been engaged in an illicit transaction in the disposition of this envelope of cocaine, which the circumstances at least suggest, is virtually neutral with respect to whether he was in possession of the drug as an apothecary, physician, dentist, podiatrist, veterinarian, scientific investigator or in another licensed capacity. It is common experience that much illicit

drug distribution is carried on by persons who are licensed to possess and dispense the drug. So far as Appellant is concerned, the statute draws no line between a licit and an illicit distribution, if the authorization to distribute was extended to Appellant by a licensed person.

At the conclusion of this analysis, I find myself wondering whether the permissible inference, from these circumstances, that Appellant's supplier was not within one of the statutory categories was not too weak to support a conviction, regardless of what alternative inferences were also permissible. In any event, it seems clear that the circumstances permitted an inference that Appellant's supplier was a licensed person selling drugs in the more profitable illicit market. The reasonableness of this inference depends, I believe, in part on the strength of any contrary inference. Where the inference of guilt is nearly matched in weight by the inference of innocence, as it is here, I would conclude that the circumstances do not exclude a reasonable hypothesis of innocence. The motion to acquit should have been granted.

I would reverse the conviction.