UNITED STATES of America,
Plaintiff-Appellee,

v.

Jimmy L. POLITE, Defendant-
Appellant.

No. 73-2500
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 13, 1974.

Rehearing Denied April 18, 1974.

Gene V. Coker, Jacksonville, Fla. (Court-appointed), for defendant-appellant.

John L. Briggs, .U. S. Atty., John J. Daley, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

WISDOM, Circuit Judge:

Jimmy L. Polite appeals from his conviction of possession with intent to distribute 6¼ grams of heroin, in violation of 21 U.S.C. § 841(a). On appeal, he attacks (1) the sufficiency of the evidence; (2) the admission of certain testimony concerning drugs other than those he was charged with possessing in the indictment; and (3) the trial judge's charge to the jury. We affirm.

The defendant was found in his apartment with 6¼ grams of heroin about twenty to thirty minutes after a package containing 13 grams of heroin was delivered by mail to his apartment. Customs and postal inspectors had discovered the heroin in the package when it had arrived in the country at San Francisco. The package was mailed from Thailand and addressed to Polite's residence in Daytona Beach, Florida. The postal authorities arranged a controlled delivery of the package to Polite's residence in Daytona Beach.

---

* Rule 18, 5 Cir., Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

About twenty to thirty minutes after this controlled delivery had taken place, four officials, one a postal inspector, another a customs agent, and the other two, Daytona Beach police detectives, entered Polite's apartment under a valid search warrant. They found Polite in a bedroom with 6¼ grams of heroin on a coffee table in front of him. They conducted a search to find the remaining heroin. During this search, they found thirty packets of heroin, each wrapped in aluminum foil and containing a mixture which included approximately one milligram of heroin, in a drawer of a dresser in a bedroom across the hall from the room where Polite had been found. It was established at trial that these "dime bags"—small packets wrapped in aluminum foil containing about one milligram of heroin—are commonly used in passing heroin on the streets. The authorities also found some butts of marijuana cigarettes in the same bedroom drawer.

While the authorities were searching the apartment, Polite remarked to them, referring to the thirty "dime bags", "I bet you didn't think I could package it up that quick".

The indictment charged possession with intent to distribute only the 6¼ grams found on the coffee table. The Government relied upon the 30 "dime bags" to prove that Polite had the requisite intent to distribute. Its theory was that the heroin found in packages suitable for street distribution indicated that Polite was a dealer in heroin; that he had received the 13-gram package delivered in the mail for the purpose of selling or distributing most or all of the 13-gram quantity; and that he therefore intended to distribute the 6¼ gram quantity found on the coffee table.

Polite advanced a different theory of the evidence at trial. He testified that he was himself addicted to heroin and that he intended to use the entire 13-gram quantity himself. He said that the 30 "dime bags" found in the drawer were not packaged with any heroin from the 13-gram package. He alleged that he had had all of that heroin on the coffee table in front of him at the time he heard that the police were coming; and that when he heard of their arrival, he had wadded up the tinfoil with the rest of the heroin on it and had thrown it into a corner of a closet. He explained the remark he had made about "packing it up that quick" by saying he had made it in order to deflect the authorities from their search before they found the wadded-up foil containing the remaining heroin.

■ Polite's first contention concerns the sufficiency of the evidence. He argues that the evidence was *consistent* with his theory that he was going to keep the heroin for his personal consumption; thus, he says, the jury "could not" have "excluded" this "hypothesis of innocence" as "unreasonable". This, he argues, means that the evidence was insufficient to support the verdict.

The argument is without merit, because it reflects a misunderstanding of the standard by which this Court reviews the sufficiency of the evidence to support a guilty verdict.

The standard utilized by this Court is *not whether in our opinion* the evidence and all reasonable inferences therefrom failed to exclude every reasonable hypothesis other than guilty, *but whether the jury might so conclude.* (Emphasis added.)

Odom v. United States, 5 Cir. 1967, 377 F.2d 853, 855. As we understand it, the appellant's argument is only that his theory that he intended to use the heroin himself is but "one hypothesis of innocence", which he is suggesting might "satisfy this Court's sense of reasonableness"; but we have often held that this is not enough to permit us to reverse the verdict. United States v. Squella-Avendano, 5 Cir. 1973, 478 F.2d at 433, 436. We must uphold a guilty verdict if there is any "theory of the evidence from which *the jury* might have excluded ev-

ery hypothesis except guilt beyond a reasonable doubt". *Odom, supra,* 377 F.2d at 855 (emphasis supplied). Without recounting every piece of evidence leading to this conclusion, we conclude from our review of the evidence that this standard was met in this case.

The appellant's second contention is a dual one. He contends that the trial judge erred in admitting testimony (a) about the thirty packets of heroin found in the dresser drawer; and also (b) about the marijuana cigarette butts found in the drawer. Both, he argues, amounted to evidence of other crimes, and their introduction was therefore incurably prejudicial.

▮ We disagree. The evidence concerning the thirty packets of heroin was admissible to show intent, as we have already noted, and evidence of other similar crimes is admissible to show intent. See, e. g., Mathews v. United States, 5 Cir. 1969, 407 F.2d 1371, 1381–1382. The testimony concerning marijuana was not admissible to show intent, but its admission did not, in our view, constitute reversible error. The testimony was confined to two statements made by two of the participants in the search of Polite's apartment. They amounted to no more than descriptions of what they saw in the bedroom drawer; they were mere statements of having observed the *res gestae.* Later in the trial, when the Government sought to introduce the marijuana butts as an exhibit, and to have a chemist testify that the substance had been chemically identified as marijuana, the trial judge excluded the exhibit and instructed the jury to disregard the chemist's testimony concerning marijuana. In this state of the record, we cannot hold that the brief allusions to marijuana in the testimony of the customs agent and police detective who searched the apartment were sufficiently prejudicial to require a new trial.

▮ The principal objection to the charge to the jury concerns the trial judge's instruction that:

[i]f you should find, beyond a reasonable doubt, that the Defendant had knowing and intentional possession, as charged, the fact of such possession alone, of a large quantity and/or quality of heroin, unless explained to the satisfaction of the jury, by the evidence in the case, permits, but does not require the jury to draw the inference and find that the heroin was possessed with intent to distribute

. . . .

The appellant notes that there is no authority for permitting an inference of intent to distribute merely from the fact of possession of heroin of a high *quality* alone, and that this instruction, read literally, would authorize just such an inference. He argues, therefore, that the trial judge committed reversible error in giving this charge.

We cannot escape the obvious: the quality of the drugs possessed, in conjunction with the quantity, is relevant to the inference to be drawn from possession of a large quantity. Possession of six grams of 99.5% pure heroin—the purity of the heroin found in Polite's possession—obviously supports more strongly an inference of intent to distribute than does possession of heroin of, say, 5% purity. Here, the evidence was sufficient to establish that the heroin Polite possessed, given its quality and quantity taken together, was worth $60,000 on the street. We conclude that it was highly unlikely that, in the circumstances of this particular case, the effect of the instruction was to lead the jurors into thinking they could infer intent from the quality of the heroin alone. We find no "strong probability that the [instructions] 'taken as a whole were such as to confuse or leave an erroneous impression in the minds of the jurors' ". United States v. Clark, 2 Cir., 1973, 475 F.2d 240, 249, quoting Perez v. United States, 5 Cir. 1961, 297 F.2d 12, 16. We therefore find that the particular instruction in question did not constitute reversible error.

The appellant also objects to the sequence in which the judge's instructions

were given, arguing that it tended to confuse the jury on the issue of intent, and to the failure of the trial judge to give a literal definition of intent. We find these objections without merit.

Affirmed.