**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Randall Gene WHITE and James Randall Kircher, Defendants-Appellants.**

**No. 73–1642.**

United States Court of Appeals, Fifth Circuit.

·April 24, 1974.

Rehearing Denied May 16, 1974.

\*      \*      \*      \*      \*

**4**

Stanley M. Newmark, Miami, Fla., (court-appointed), for White.

Robert C. Stone, Hollywood, Fla., for Kircher.

Andrew I. Friedrich, Stanley L. Seligman, Hollywood, Fla., Basil E. Dalack, Miami, Fla. (court-appointed co-counsel), for Kircher.

Robert W. Rust, U. S. Atty., Carol M. Anderson, Asst. U. S. Atty., Miami, Fla., Mervyn Hamburg, Atty., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before BROWN, Chief Judge, and AINSWORTH and MORGAN, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Defendants-appellants White and Kircher were arrested on September 20, 1972, and later indicted for possession of heroin with intent to distribute and distribution of heroin, in violation of 21 U.S.C. § 841(a)(1). Both were convicted in separate jury trials in the Southern District of Florida. White was sentenced to concurrent terms of imprisonment for 18 months with a special parole term of three years, and Kircher was sentenced to imprisonment for two years with a special parole term of three years. Finding the evidence introduced at Kircher's trial insufficient to support the jury verdict, we reverse his judgment of conviction. We find no error in the conviction of White.

## I. WHITE

The only witness of any significance to testify at White's trial was Richard Walde, special agent of the Federal Bureau of Narcotics and Dangerous Drugs, assigned to the Drug Abuse Law Enforcement unit (DALE) in Miami, Florida. Walde testified that on September 19, 1972, he met with Mike Hennan, a confidential informant, at a Royal Castle restaurant. He and Hennan then went to a house at 1171 S.W. 31st Avenue in Miami, where they met with defendant White and negotiated a purchase of some heroin.

The three men drove to a 7-Eleven grocery store in Lauderhill, where White left Hennan and Walde, saying he would have to meet his source alone. He returned a few minutes later to report that his source was not at home. They drove back to the S.W. 31st Avenue address, where the two split up, with the understanding that they would meet again at four that afternoon. At the second meeting, White told Walde that he could not sell Walde any heroin unless Walde "shot up" (injected heroin into himself) in front of him. Walde refused, and the deal fell through.

The next day Hennan called Walde, and as a result of their conversation the two men met at the same Royal Castle restaurant at 11:30 a.m. Walde searched Hennan and determined that he had no drugs or money in his possession. He then gave Hennan five "marked" $20 bills and a government car which had also been searched. Hennan drove off in the government car, with Walde following in another car. Hennan drove to the house on S.W. 31st Avenue, where he picked up White and another man named Kettner. Hennan, White and Kettner then drove to the 7-Eleven store, with Walde following at a distance. Hennan and Kettner left the car, and White drove off. Walde did not follow White, but saw him return some time later. Walde watched Kettner and Hennan re-enter the car and return to 1171 S.W. 31st. At that point, Kettner and White left the car, and Walde followed Hennan back to the Royal Castle. Walde testified that at the Royal Castle,

> Hennan got into my car and he produced a bag which he stated was heroin, a hundred-dollar piece, a hundred dollars worth of heroin, which he stated he had gotten from the defendant White.

Finally, Walde testified that after taking White to the police station and receiving a written waiver of White's so-called *Miranda* rights, he obtained a written confession to the effect that after leaving Hennan and Kettner, White went to Kircher's house at 4921 N.W. 13th Street, Lauderhill, and purchased $100 worth of heroin from Kircher with five $20 bills, later giving the heroin to Hennan.

White's first argument on appeal is that the district judge erroneously allowed the confession into evidence because in spite of the written waiver of rights, any confession obtained while a suspect is in custody is inherently coerced. Counsel for White acknowledges that this position is an extension of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but argues that his position is a logical and necessary extension of *Miranda*. We do not agree that the argument is a necessary extension of *Miranda*. The entire *Miranda* opinion was based on the assumption that not all in-custody interrogation is coerced, and we are unable to hold to the contrary here. The Court in *Miranda* held specifically that an in-custody interrogation following a knowing, intelligent and voluntary waiver of rights by the accused is admissible as evidence in a criminal prosecution. We follow that holding in this case.

Next, White argues that the confession does not meet the requirements of *Miranda* itself because the waiver of rights was coerced. Not only was the evidence presented at the hearing on the motion to suppress sufficient to support the district judge's denial of the motion, the evidence almost required it. There was no indication that any threats were made against White, or that he was tricked into signing the confession. The only contrary indication was a single statement by the agents that it would be "helpful" to sign the confession. In an otherwise non-coercive atmosphere, such an isolated statement standing alone is insufficient to invalidate an otherwise legal confession.

White's third argument is that the district court erred in allowing the confession to be introduced into evidence without sufficient corroboration. Counsel for White argues that before a con-

fession is introduced into evidence, or at least at some point in the government's case, it is necessary to introduce evidence independent of the confession establishing a *corpus delicti*. That is, the government must prove, without the use of the confession, the existence of a crime, and may use the confession only to connect the defendant with the crime. Since the only testimony regarding the heroin was that it passed from one government agent to another, the argument concludes, no *corpus delicti* was proved. This argument has two flaws. First, as the testimony quoted above indicates, Walde was allowed to testify without objection that Hennan told him that he (Hennan) obtained the heroin from White. This testimony was obviously hearsay. Nevertheless, counsel who at other points in the trial repeatedly, promptly and correctly made objections to testimony and argument, clearly waived his client's right to exclude this evidence by not objecting to the testimony.

▌ But there is also another reason why we cannot accept this argument, and that is that independent evidence of a *corpus delicti* was not needed. It is true that in some jurisdictions, the prosecution must present substantial independent evidence of every element of the *corpus delicti* in order to provide sufficient corroboration of an extrajudicial confession. See, e. g., Robinson v. State, 71 Okl.Cr. 75, 108 P.2d 196 (1940), Commonwealth v. Puglise, 276 Pa. 235, 120 A. 401 (1923).

However, the federal courts follow the majority rule, cf., Anno., 45 A.L.R.2d 1316 (1956), that "The corroborative evidence need not be sufficient, independent of the statements, to establish the *corpus delicti*." Opper v. United States, 348 U.S. 84, 93, 75 S.Ct. 158, 164, 99 L. Ed. 101 (1954). See also, Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); United States v. Khandjian, 489 F.2d 133 (5th Cir. 1974). As this court recently held,

The requirement is only that there be extrinsic evidence corroborating the confession *as a whole*, which, taken together with the confession, is sufficient to support a finding of guilt beyond a reasonable doubt. Smith v. United States, 1954, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed.2d 192; United States v. Abigando, 5 Cir. 1971, 439 F.2d 827. There is no requirement that there be evidence extrinsic to the confession proving every element of the offense, and no requirement that the extrinsic evidence be sufficient to establish the corpus delicti. If there is extrinsic evidence tending to corroborate the confession, the confession as a whole is admissible; and some elements of the offense may be proven entirely on the basis of a corroborated confession. See *Smith*, 348 U.S. at 156, 75 S.Ct. 194, 99 L.Ed. 192; Abigando, 439 F.2d at 832–833. United States v. Gravitt, 484 F.2d 375, 381 (5th Cir. 1973). [Emphasis in original.] [Footnotes omitted].

In this case, there is no corroboration of many of the facts in White's confession, but the testimony of Walde does tend very strongly to corroborate the confession *as a whole*. Walde's testimony covers the entire time period of the incident except the time that White left Hennan and Kettner alone at the 7-Eleven store. White's confession "fills in the gap" in Walde's story, and is completely consistent with it. Under these circumstances, the required corroboration of White's confession was provided by Walde's testimony, and the confession was admissible.

▌ Finally, White argues that the district court erred in failing to direct a verdict of acquittal because of insufficient evidence. The district court correctly stated that without White's confession, there would not have been enough evidence to send the case to the jury. But with the confession, there obviously was enough.

White's other points of error are without merit.

## II. KIRCHER

At Kircher's trial, Hennen testified about the meetings between himself, Walde and White. He testified that on September 20, he got the car and the marked $20 bills from Walde, picked up White, drove to the 7-Eleven, where White left in the car, and then returned later with some heroin. He testified that he had never met Kircher.

Walde then testified that on September 20, he had the dealings with Hennen described above. He also testified that on September 20, he observed that Kircher was arrested by the local police for a traffic violation, and was taken to a house at 4921 N.W. 13th Street in Lauderhill. The house was searched pursuant to a warrant, and one of the $20 bills Walde had given Hennen was found in the bedroom of the house. After being advised of his right to remain silent, Kircher at first denied that the $20 bill was his, but then admitted that it belonged to him. Walde also testified that some narcotics paraphernalia were found in the house.

Finally, counsel for the government and the defense stipulated that had Agent McDonald been at the trial, he would have testified that on September 20 a person who may or may not have been White drove up to the residence at 4921 N.W. 13th Street in Lauderhill, got out of the car White had been driving, went into the house and stayed for about 15 minutes, and then left.

The correct test to use in reviewing a district court's action with respect to a motion for a directed verdict of acquittal has been stated in several different ways. Recently, this court used the following test:

> On a motion for judgment of acquittal, the test is whether, taking the view most favorable to the Government, a reasonably-minded jury could accept the relevant evidence as adequate and sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt. [Citations omitted].

United States v. Jeffords, 491 F.2d 90 (5th Cir. 1974) [March 18, 1974, No. 73–2535].

We also said recently,

> The standard utilized by this Court is *not whether in our opinion* the evidence and all reasonable inferences therefrom failed to exclude every reasonable hypothesis other than guilty, *but whether the jury might so conclude.* [Emphasis added]. Odom v. United States, 5 Cir. 1967, 377 F.2d 853, 855.

United States v. Polite, 489 F.2d 679 (5th Cir. 1974) [February 13, 1974, No. 73–2500].

Last year, we stated the test this way:

> If the evidence is such that a reasonable person *may* have a reasonable doubt as to the defendant's guilt, the case should be submitted to the jury. On the other hand, a trial judge should not permit a case to go to the jury if the evidence is so scant as to allow the jury merely to speculate or to conjecture as to the defendant's guilt. In other words, a motion of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged. [Citation omitted].

United States v. Stephenson, 474 F.2d 1353 (5th Cir. 1973).

We are inclined to think that the differences between these various formulations may be merely verbalistic. United States v. Warner, 441 F.2d 821 (5th Cir. 1971), but no matter what view of them is taken, we think the evidence presented against Kircher fails to qualify under any correct formulation of the test. There were simply too many "loose ends" in the government's case as it was presented at Kircher's trial. On the basis of the evidence presented by the government, we hold that a jury could not reasonably have concluded beyond a rea-

sonable doubt that Kircher committed all the elements of the crimes charged.

For these reasons, the conviction of White is affirmed, and the conviction of Kircher is reversed.