STATE OF HAWAII, Plaintiff-Appellee, *v. DON LAURIE, Defendant-Appellant*

NO. 5782

APRIL 1, 1976

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY KOBAYASHI, J.

Don Laurie (appellant) was found guilty by a third circuit jury of attempted rape in the first degree, a class A felony, and of attempted assault in the first degree, a class B felony. He appeals these convictions contending (1) that the trial judge improperly denied his motion for judgment of acquittal on the attempted rape in the first degree charge; (2) that the trial judge failed to respond adequately to a question submitted by the jury during deliberation; and (3) that the evidence was legally insufficient to support the guilty verdicts. We affirm.

### STATEMENT OF THE CASE

On July 2, 1974, at around 6:30 p.m., appellant visited Mrs. Patricia Kachlic (Mrs. Kachlic) at her dwelling place, on an isolated ranch in Puako, on the island of Hawaii. The dwelling place is comprised of three residential buildings: a main residence (building A) and two "sleeping shacks" (shacks B and C). Mrs. Kachlic lived there with her two children, son Mickey, age six, and daughter Jessica, age 18 months, the victim of the alleged crimes.

Appellant and Mrs. Kachlic had known each other for a little over a month and were sexual companions. Mrs. Kachlic had, however, attempted to end the relationship by telling appellant on the previous day, July 1, 1974, that she did not want to see him anymore.

As appellant approached building A upon his arrival that evening, Jessica started crying for unexplained reasons when she saw him. Mrs. Kachlic decided to put Jessica to sleep in

the customary manner by lying down with her. Appellant objected to Mrs. Kachlic's intention to lie with her daughter; instead, he took Jessica out of building A to shack B, apparently to try to put her to sleep as he had done in the past. Shack B was where the children had their beds and is situated approximately eleven feet from building A, between building A and shack C. Mickey accompanied them to the shack. During these events, both appellant and Jessica were nude as was their custom when at the ranch.

Jessica's crying was continuous from the time appellant had arrived and continued for another five or six minutes after appellant had taken her to shack B. Mrs. Kachlic apparently felt that appellant's efforts to put Jessica to sleep were not succeeding and so went to shack B and brought her back to building A and lay with her. Appellant joined Mrs. Kachlic and Jessica for an unspecified period during which Jessica remained awake. Appellant then took Jessica to shack C, which is approximately twelve feet beyond the far side of shack B, and unlike shack B, cannot be seen into from building A. He remained there alone with Jessica for approximately ten minutes before she finally stopped crying.

Mrs. Kachlic then approached shack C to see if Jessica was asleep. Through the door of that shack, she saw Jessica still awake and tossing on a mattress-bed but no longer crying. Appellant was standing next to the bed with nothing notable or unusual about him or his activity. Satisfied that Jessica was about to sleep, Mrs. Kachlic returned to building A and appellant followed her. Appellant then sent Mickey to shack C to watch Jessica until she went to sleep.

After a few minutes Mickey returned to inform Mrs. Kachlic that Jessica was asleep. Soon after that, appellant went back to shack C, for reasons unknown, and awakened Jessica. Mrs. Kachlic, upset with appellant for waking her daughter, started to bring Jessica back to building A when Mickey pointed out that Jessica was "hurt". Mrs. Kachlic then noticed some dried blood on her daughter's buttocks. Upon closer examination, she discovered a tear in Jessica's vagina. Nearly hysterical, Mrs. Kachlic accused appellant of hurting Jessica but he denied "touching" her. He seemed

neither surprised nor concerned about the injury, which appeared to be "pretty bad", according to Mrs. Kachlic.

While Mrs. Kachlic was getting Jessica ready to go to a doctor, appellant lost his temper at Mickey and threatened that he (Mickey) had better not say anything to him (appellant) and started hitting the boy. Mrs. Kachlic felt that appellant was angry at Mickey for pointing out Jessica's injury.

Appellant then tried to discourage Mrs. Kachlic from taking Jessica to a doctor. Since appellant had the only car there at the ranch, Mrs. Kachlic made it clear that she intended to take Jessica to a doctor even if she had to hitchhike. Appellant finally agreed to drive them to a junction where they could hitch a ride to a doctor in Waimea. He then put his shorts on and proceeded to drive the Kachlics to the junction.

When they did arrive near the junction, however, appellant again tried to discourage Mrs. Kachlic from seeking a doctor. He at first would not let her get out of the car; then when she and her children did get out, appellant followed them and attempted to physically restrain Mrs. Kachlic by grabbing at her arm. When she made it clear that she was determined to go to Waimea, appellant agreed to take them there, and did so.

The doctor who examined Jessica testified as a State witness to the effect that: Jessica had a facial bruise on her left cheek (Mrs. Kachlic claims that it was not there before the alleged crimes); she had a tear in her perineum (*i.e.* the area between the female genitalia and the rectum) that reached from the vaginal opening one inch toward the rectum and extended one and a half inches into the vagina; the tear was a third-degree tear which was not a major injury; the tear could have been a major injury had it extended to the rectum or to the peritoneal cavity; the tear was probably caused by a large, blunt object, possibly an erect adult penis; the child's vagina could never have accommodated an adult's erect penis without tearing.

Other evidence submitted by the State included: the pair of shorts that appellant wore on the night of the alleged crimes which had a blood stain on the inside surface of the fly area; a

blood-stained blanket found on the mattress-bed in shack C where Jessica was allegedly assaulted; the blanket was found "crumpled up into a big ball" in such a manner that no bloodstains were visible unless the blanket was picked up; testimony by Mrs. Kachlic that she had caught appellant touching Jessica's vagina on two occasions prior to the day of the incident and that Jessica has had an abnormal awareness of her vagina since the incident; and a memorandum submitted by a police officer, who was escorting appellant to and from the county jail to the courtroom during the trial; the memorandum was an approximation of statements made by appellant to the escorting officer and read in part:

That kid was hurt for only two days and I'll probably have to spend years in jail for it. One thing for sure, I hope I don't go to O.P. [Oahu Prison] . . . [b]ecause I'd get killed there. The other prisoners, they don't care too much for rapists. If only that stupid broad hadn't opened her mouth.

At the close of the prosecution's case, appellant moved for a judgment of acquittal on the charges because, he argued, the State had not presented sufficient evidence to show a prima facie case of assault in the first degree or attempted rape in the first degree. The trial judge denied the motion.

Appellant then chose to rest on his presumption of innocence and the jury retired to deliberate after the judge instructed them. During the course of deliberation, the jury submitted several questions to the judge. Among them was the question: "Are mental damages considered in Assault in the First Degree?"

Appellant requested that the trial judge include in an additional instruction to the jury that serious bodily injury means "purely physical damage". The trial judge denied the request and responded to the question by repeating the statutory definition of "serious bodily injury" that was given in the original instruction, to-wit: "'Serious bodily injury' means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ."

The jury went back into deliberation without further questions on the matter and returned a verdict of guilty of attempted rape in the first degree and of attempted assault in the first degree.

## I. DENIAL OF MOTION TO ACQUIT ON RAPE IN THE FIRST DEGREE

Appellant argues that according to Rule 29(a) of the Hawaii Rules of Criminal Procedure[1] the trial judge should have granted his motion for acquittal on the rape in the first degree charge. The State failed, he argues, to present legally sufficient evidence to prove the essential elements of the offense.

It is well settled that to deny a motion to acquit there must be sufficient evidence to support a prima facie case; the evidence must enable a reasonable mind fairly to conclude guilt beyond a reasonable doubt, giving full play to the right of the fact finder to determine credibility, weigh the evidence, and draw justifiable inferences of fact. *State v. Cannon*, 56 Haw. 161, 163, 532 P.2d 391, 394 (1975); *State v. Rocker*, 52 Haw. 336, 345-46, 475 P.2d 684, 690 (1970). This test applies to both direct testimony and circumstantial evidence. *State v. Cannon, supra.*

A prima facie case of attempted rape in the first degree would require a sufficient showing that: (a) appellant had the "specific intent" to engage in sexual intercourse, by "forcible compulsion" with Jessica Kachlic; and that (b) appellant engaged in conduct which, under the circumstances as he believed them to be, constituted a "substantial step" in a course of conduct intended to culminate in his commission of that crime.[2]

---

[1] Rule 29(a) HRCrP in pertinent part reads:

The court . . . shall order the entry of judgment of acquittal of one or more offenses charged . . . after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. . . .

[2] HRS § 705-500 — *Criminal attempt* reads in part:

(1) A person is guilty of an attempt to commit a crime if he:

. . . .

(b) Intentionally engages in conduct which, under the circumstances as he believes them to be, constitutes a substantial step in a course of conduct intended

A. *Specific Intent*. As the trial judge stated in his instruction to the jury prior to deliberation:

> Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a person does or fails to do, there can be no eye-witness account of the state of mind with which the acts were done or omitted. But what a person does or fails to do may indicate intent or lack of intent to commit the offense charged.[3]

In a strikingly similar case, *Richardson v. State,* 14 Md. App. 487, 287 A.2d 339 (1972), defendant entered the bedroom of an 18-month old girl and closed the door behind him. The victim was heard crying after defendant's entry. After he left the room, the victim continued crying and came out with blood inside and outside her diapers. A doctor's examination revealed a tear from the posterior of the victim's vagina to her anal opening, approximately one and a half inches long and one and a half inches deep. The trial court found the requisite "intent to rape" and the Supreme Court of that state affirmed. Likewise, we believe that the evidence presented by the State in this case was legally sufficient to support a finding that appellant had the specific "intent to rape."

As for the element of "forcible compulsion", we have no doubt that the evidence was sufficient to show appellant's intention to use whatever force necessary to accomplish his end.

---

to culminate in his commission of the crime.

. . . .

(3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

HRS § 707-730 — *Rape in the first degree* reads in part:

(1) A male commits the offense of rape in the first degree if:

(a) He intentionally engages in sexual intercourse, by forcible compulsion, with a female and:

> (i) The female is not, upon the occasion, his voluntary social companion who had within the previous 12 months permitted him sexual intercourse; . . .

. . . .

[3] *See* Benchwick v. United States, 297 F.2d 330 (9th Cir. 1961); State v. Sorenson, 44 Haw. 601, 608, 359 P.2d 289, 292-93 (1961); Morissette v. United States, 342 U.S. 246, 255-56 (1952).

"Forcible compulsion" is defined by section 707-700(12) of Hawaii Revised Statutes. It reads in part: "Forcible compulsion is physical force that overcomes earnest resistance . . . ." It is inconceivable that little Jessica would not earnestly resist efforts by an adult male to effect sexual intercourse with her, let alone, give consent. The resistance would, in fact, be an automatic response because of the inevitable pain that would result from such an attempt. As the State's medical witness had testified, the victim's vagina could not accommodate an erect adult's penis without tearing. Yet, the evidence presented was clearly sufficient to enable a reasonable mind to conclude that appellant intended to culminate his plan in spite of whatever resistance young Jessica could muster, and the impossibility of the victim's vagina to accommodate.

Of particular relevance to show that appellant intended to effect sexual intercourse are the following: appellant's sexual interest in Jessica as evidenced by his touching her vagina on two occasions prior to the alleged crimes; the State's medical witness' testimony that Jessica's injury was probably caused by a large, blunt object, possibly an erect adult's penis; appellant's blood-stained shorts; the opportunity which appellant had secured for himself of being alone and in the nude with Jessica; and the comments appellant had made to the police officer who escorted him during the trial.

B. *Substantial Step*. To constitute a "substantial step" toward commission of a crime, appellant's conduct must be strongly corroborative of his criminal intent. Sec. 500(3) Haw. Penal Code [HRS § 705-500(3)]. Appellant's conduct, especially his insistence upon "putting Jessica to sleep", his removing her to the more remote, less visible shack, and his evident infliction of injuries upon her, included substantial steps toward commission of the intended crime.

We therefore conclude that along with the other evidence, evidence of appellant's conduct and comments, before, during and after the incident, supported a prima facie case against appellant, and the trial court did not err in denying appellant's motion to acquit on the attempted rape charge.

## II. TRIAL JUDGE'S RESPONSE TO THE JURY'S QUESTION ON MENTAL DAMAGES

Appellant argues that the trial judge's response to the jury's question regarding mental damages was so inadequate that it amounted to reversible error.

Rule 30(d), HRCrP, in part provides:

> If, during deliberation on its verdict the jury shall request further instructions, the court *may* further instruct the jury in accordance with instructions prepared by the court and reduced to writing, first submitting the same to counsel. (Emphasis added.)

We are of the opinion that the trial judge's response was not inadequate and that the court's rereading of a portion of the original instruction was a proper response to the jury's question.[4] Furthermore, the record does not show and the appellant has not shown that the court's rereading of a portion of the original instruction has confused or left an erroneous impression in the minds of the jurors. *See United States v. Polite,* 489 F.2d 679, 681 (5th Cir. 1974); *Perez v. United States,* 297 F.2d 12, 16 (5th Cir. 1961).

## III. SUBSTANTIAL EVIDENCE TO SUPPORT JURY VERDICT

Appellant argues that the evidence presented by the State was not legally sufficient to support the jury's verdicts of guilty on the two crimes of which he was convicted.

On appeal the test to ascertain the legal sufficiency of the evidence is whether there is substantial evidence to support the verdict of the jury. *Richardson v. State, supra; State v. Kekaualua,* 50 Haw. 130, 433 P.2d 131 (1967). *See also* 1 WHARTON'S CRIMINAL EVIDENCE § 11 (13th ed. 1972). And, ". . . the evidence must be considered in its strongest light for

---

[4] Section 5.3 of the ABA, *Standards Relating to Trial by Jury* reads in part:

(a) If the jury, after retiring for deliberation, desires to be informed on any point of law, they shall be conducted to the courtroom. The court shall give appropriate additional instructions in response to the jury's request *unless: (i) the jury may be adequately informed by directing their attention to some portion of the original instructions;* . . . . (Emphasis added.)

*See* Tellis v. State, 84 Nev. 587, 590-91, 445 P.2d 938, 941 (1968).

the state." *State v. Cummings*, 49 Haw. 522, 423 P.2d 438 (1967); *State v. Carvelo*, 45 Haw. 16, 31, 361 P.2d 45, 53 (1961).

A. *Attempted Rape in the First Degree*. Our analysis in part I of this opinion as to appellant's specific intent and substantial steps taken to commit rape in the first degree is applicable here and amply illustrates how the "substantial evidence" test is met.

B. *Attempted Assault in the First Degree*. Here, the "substantial step" is clearly evidenced by the same facts that constituted the substantial steps toward commission of the rape (discussed *supra*). The crucial question then, is whether there was substantial evidence to support the jury's conclusion that appellant had the specific intent to inflict serious bodily injury[5] upon Jessica.

The surrounding circumstances of the case and the nature of the act, we believe, provide substantial evidence to support the jury's conclusion. Of especial significance were the circumstances surrounding the incident; they manifest enmity between appellant and the children. There was obvious jealousy on the part of the appellant for Mrs. Kachlic's attention, and Jessica's tearful outburst upon appellant's arrival at the dwelling place as well as the beating appellant inflicted upon Mickey were strongly suggestive of the hostile relationship. The fact that Mrs. Kachlic had, on the day before, told appellant that she no longer wanted to see him is also relevant as to appellant's state of mind on the day of the crimes. His lack of concern for Jessica's welfare upon discovery of what appeared to be a serious injury also supports a conclusion that appellant intended to inflict serious bodily injury upon her.

Furthermore, the nature of the act, *i.e.*, sexual intercourse by an adult male with an 18-month old female, implicitly involves a grave risk of serious bodily injury to the

---

[5] *See* HRS § 705-500 Criminal Attempt at n. 2.

HRS § 707-710 Assault in the First Degree reads:

(1) A person commits the offense of assault in the first degree if he intentionally or knowingly causes serious bodily injury to another person.

. . . .

child. As the State's medical witness had testified, the inevitable tear that would result from an attempt to effect such intercourse, could be "quite a major injury" if it extends into the peritoneal cavity or into the rectum.

Appellant argues that the "substantial evidence" test is not met because there was no evidence that the victim had sustained serious bodily injuries. He cites the State's medical witness as proof because the doctor was unable to characterize the victim's wound as "major".

Appellant's argument would be relevant on an appeal from an assault in the first degree conviction but not on an appeal from an *attempted* assault in the first degree verdict. As implied earlier, the critical elements in a criminal attempt are an *intent* to commit the target crime coupled with conduct which amounts to a substantial step toward commission of that intended crime. These two elements of a criminal attempt imply conduct that falls short of completion of the intended crime and so the fact that an element of that intended crime is not met is immaterial.

We are of the opinion that the record, especially the particular facts we have emphasized, shows clearly that appellant's convictions on both charges are supported by substantial evidence.

*James T. Leavitt, Jr. (Hart, Leavitt* and *Hall* of counsel) for defendant-appellant.

*Paul M. De Silva,* Prosecuting Attorney, County of Hawaii *(Christopher J. Roehrig,* Deputy Prosecuting Attorney, on the brief) for plaintiff-appellee.