LAW LIBRARY

**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

NO. 29309

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
KELLY A. ARQUILLA, Defendant-Appellant

APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-CRIMINAL NO. 07-1-2207)

JEAN R. KIMOTO CLERK APPELLATE COURTS STATE OF HAWAI'I

2010 JUL 21 AM 8:07

FILED

MEMORANDUM OPINION
(By: Fujise, Presiding Judge, Leonard and Reifurth, JJ.)

This memorandum opinion addresses two points of alleged error regarding communications between the court and a deliberating jury. Specifically, we determine whether it was erroneous for the trial court to: (1) deny a jury's request to review a significant portion of witness testimony transcripts, and (2) answer a question from the jury by referring them back to a portion of the jury instructions. In addition, we determine whether layperson eyewitness testimonies were insufficient to establish "bodily injury" under section 707-700, Hawaii Revised Statutes (1993), in part because an examining physician found no injuries on the infant victim.

For the reasons discussed below, we conclude that the trial court's responses to the jury were not erroneous, and that the eyewitness testimony was sufficient to establish bodily injury. Consequently, we affirm the judgment of the Family Court of the First Circuit (family court).[1]

Defendant-Appellant Kelly A. Arquilla (Arquilla) appeals from the July 15, 2008 Judgment of Conviction and Sentence finding her guilty of Abuse of Family or Household Members in violation of section 709-906 (1), Hawaii Revised Statutes (Supp. 2009). Arquilla was sentenced to twenty-two days in prison, with credit for time served, and two years of probation in the Hawai'i Opportunity Probation with Enforcement program. She was also ordered to pay a crime victims

---

[1]    The Honorable Patrick W. Border presided.

compensation fee of $55.00 and a probation services fee of
$150.00.

On appeal, Arquilla argues that: (1) the family court
reversibly erred by denying the jury's request for transcripts of
the testimony of the four principal percipient witnesses, (2)
there was insufficient evidence for the jury to find Arquilla
guilty under the statute, and (3) the family court reversibly
erred by responding to a jury inquiry by referring the jury back
to a specific section of the jury instructions.  We resolve
Arquilla's points of error as follows:

**I.    The Family Court Did Not Abuse Its Discretion By Refusing To
       Provide The Jury With The Requested Transcripts**

Arquilla was charged with one count of Abuse of Family
or Household Members, under which the State contended that
Arquilla intentionally, knowingly or recklessly dropped her
twenty-four-day-old daughter from approximately waist-height onto
the floor of her apartment in the aftermath of an argument with
the Ben Teixiera (Ben), her boyfriend and the infant's father.

The charge was based largely on the eye-witness
testimony of Sharon Teixiera (Sharon) and her boyfriend, Jesse
Grinker (Jesse).  Sharon is Ben's sister, and was present at
Arquilla's apartment to help Ben get gas for his car.

After closing arguments in the case and after
deliberating for a few hours, the jury sent the following written
communication to the court:  "The jurors do not all agree as to
what the witnesses said and which witness said what.  So, we
request a transcript of the testimonies of: Sharon[,] Jesse[,]
Ben[, and Arquilla]."

The family court responded, in writing:  "You must rely
upon your memory of the evidence in your deliberations.  There
are no transcripts of the witness[es]' testimony."

This court has previously held that "[b]ecause the
circuit court's response to a jury communication is the
functional equivalent of an instruction, the standard of review
for jury instructions also applies to reviewing a trial court's
answers to jury communications." *State v. Miyashiro*, 90 Hawai'i

489, 492, 979 P.2d 85, 88 (App. 1999) (trial court's failure to provide unanimity instruction in response to jury's request for information on charged offense was misleading).

When jury instructions are at issue on appeal, "the standard of review is whether, when read and considered as a whole, the instructions given are prejudicially insufficient, erroneous, inconsistent, or misleading." *State v. Gonsalves*, 108 Hawai'i 289, 292, 119 P.3d 597, 600 (2005) (quoting *State v. Kinnane*, 79 Hawai'i 46, 49 897 P.2d 973, 976 (1995)) (internal quotation marks omitted).

In determining whether the family court's response to the jury's request is prejudicially insufficient, erroneous, inconsistent or misleading, we observe that trial courts are typically afforded significant deference with regard to jury requests for transcripts. The Hawai'i Supreme Court has referred approvingly to the Illinois Supreme Court's explanation that:

> The trial court will have . . . full knowledge of the case. It will know the charges against the accused, the witnesses and their supporting or defeating testimony and other evidence which may have been presented. It will be in a position to assess the request and judge whether a review of testimony, considering the circumstances, will be helpful or hurtful to the jury's proper deliberations. This question of review, like so many others which appear in the course of trial, is best entrusted to the trial court's sound discretion.

*State v. Minn*, 79 Hawai'i 461, 466, 903 P.2d 1282, 1287 (1995) (quoting *People v. Pierce*, 308 N.E.2d 577, 578 (Ill. 1974) (affirming trial court's denial of jury's request for testimony of the victim and arresting officer).

As a result, the decision whether to allow a read back of testimony to a jury during deliberations is a matter "entirely in the sound discretion of the [trial] court." *Medeiros v. Udell*, 34 Haw. 632, 638 (Haw. Terr. 1938). The majority of jurisdictions that have considered the question follow this approach. *Minn*, 79 Hawai'i at 465-66, 903 P.2d at 1286-87; see, e.g., *United States v. Holmes*, 863 F.2d 4, 5 (2d Cir. 1988); *United States v. De Palma*, 414 F.2d 394, 396-97 (9th Cir. 1969); *People v. Coleman*, 534 N.E.2d 583, 610 (Ill. App. Ct. 1989); *Commonwealth v. Richenburg*, 518 N.E.2d 1143, 1150 (Mass. 1988);

*State v. Lang,* 272 S.E.2d 123, 124 (N.C. 1980); *People v. Howe,*
221 N.W.2d 350, 351-52 (Mich. 1974).

Nevertheless, there are limits to the trial court's
discretion. In *Minn,* for instance, the supreme court observed
that "an arbitrary denial of a jury's request for a 'read back'
of a witness's testimony during deliberations constitutes an
abuse of discretion." *Id.* at 465, 903 P.2d at 1286 (citing *State
v. Estrada,* 69 Haw. 204, 228-29, 738 P.2d 812, 828 (1987) (where
two witnesses' testimonies contradicted each other, the
unexplained exclusion of the testimony of one witness, despite a
jury request for both, may have improperly influenced the jurors
into believing that the testimony of the other witness was more
important, and was therefore an abuse of discretion)).
Furthermore, "[t]he trial court's reasons for granting or denying
the jury's request should be clearly set forth in the record."
*Minn,* 79 Hawai'i at 466, n.9, 903 P.2d at 1287, n.9.

We reiterate the supreme court's admonition that the
trial court should state on the record its reasons for granting
or denying a jury's request for a "read-back" or for testimony
transcripts. *Id.* We decline, however, to find an abuse of
discretion here because this case revolves around the relatively
straightforward issue of whether the jury believed that Arquilla
intentionally, knowingly or recklessly dropped her infant
daughter on the floor outside the apartment bathroom, and whether
as a consequence, the infant suffered physical pain, illness, or
any impairment of physical condition. The jurors had not been
deliberating long before they requested transcripts of the
testimony of four of the six trial witnesses. After receiving
the court's response, the jurors did not renew or narrow their
request, nor did they advise the court that they were deadlocked.
Rather, by the next morning, the jury announced its decision.

We do not conclude that the family court's failure to
say any more than that "there are no transcripts of the
witness[es]' testimony" amounts to a failure to state its
reasons, or an "arbitrary denial" of the jury's request. Under
the circumstances of this case, the family court's failure to set
out in detail its rationale for denying the jury's request or to

4

immediately explore options which might have accommodated the jury, standing alone, did not adversely affect Arquilla's substantial rights. Thus, we conclude that there was no abuse of discretion here.

Indeed, in *Minn*, the supreme court applied the abuse of discretion standard and held that the trial court's observation that: "(1) the issue before the jury was a simple one; (2) the evidence was presented to the jury in just one full day; and (3) the jury had been deliberating for a full day and a half[,]" was a sufficient basis for the trial court to conclude that the jury was hopelessly deadlocked, and upon which to refuse to conduct a requested read back of witness testimony. *Minn*, 79 Hawai'i at 466, 903 P.2d at 1287. In a similar context here, no instructional error has been demonstrated. Consequently, we conclude that the family court did not abuse its discretion by refusing to provide the jury with the transcripts it requested. *See State v. Smith*, 582 N.W.2d 894, 895-96 (Minn. 1998) (denial of jury's request for re-reading was not plainly erroneous; court stated that jurors should rely on their memory and that no transcripts were available).

## II. There Was Sufficient Evidence To Convict Arquilla Of Abuse Of Family Or Household Members

Arquilla claims that there was insufficient evidence to convict her of Abuse of Family or Household Members because the State failed to prove that she intentionally, knowingly, or recklessly caused bodily injury to her infant daughter.[2] We

---

[2] Although framed as the State's failure to establish the requisite state of mind, Arquilla's argument is directed toward establishing that error arises from the State's alleged failure to prove bodily injury. To the extent that Arquilla argues that the State failed to establish intent, the supreme court has "consistently held that proof by circumstantial evidence and reasonable inferences arising from circumstances surrounding the defendant's conduct is sufficient. Thus, the mind of an alleged offender may be read from his acts, conduct and inferences fairly drawn from all the circumstances." *State v. Stocker*, 90 Hawai'i 85, 92, 976 P.2d 399, 406 (1999) (quoting *State v. Sadino*, 64 Haw. 427, 430, 642 P.2d 534, 536-37 (1982)) (internal quotation marks, ellipses, and brackets omitted). Arquilla concedes that two witnesses, Sharon and Jesse, testified that they observed Arquilla intentionally drop the infant from waist-high onto a hard linoleum floor outside the bathroom door. Sharon further testified that she heard a "tunk" sound when the infant hit the floor, and that Arquilla, when confronted about having dropped the infant, said, "So, I don't care . . . . Your brother's going to get arrested because

disagree, and conclude that there was sufficient evidence to convict Arquilla of the charge.

The law provides that "[i]t shall be unlawful for any person, singly or in concert, to physically abuse a family or household member[.]"  HAW. REV. STAT. § 709-906(1).  "Physical abuse" has been defined to mean causing "bodily injury" to another person.  *State v. Nomura*, 79 Hawai'i 413, 416, 903 P.2d 718, 721 (App. 1995).  Meanwhile, "bodily injury" includes "physical pain."  HAW. REV. STAT. § 707-700.

When considering whether there was substantial evidence to support a conviction under the sufficiency of the evidence standard, the evidence adduced at trial must be considered "in the strongest light for the prosecution."  *State v. Richie*, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998).

Even the testimony of a single percipient witness can provide sufficient evidence to support a conviction.  *State v. Pulse*, 83 Hawai'i 229, 244, 925 P.2d 797, 812 (1996).  Furthermore, the trial court is entitled to draw all reasonable inferences and deductions from the evidence adduced at trial.  *State v. Hoang*, 94 Hawai'i 271, 281, 12 P.3d 371, 381 (App. 2000) (reasonable for the trial court to infer that the victim felt pain, "even though there was no evidence adduced at trial to that specific effect").

In particular, a court may infer that a defendant caused a victim to feel pain based on: (a) lay witness testimony regarding his or her observation of physical contact between the defendant and victim, or (b) lay witness testimony regarding his or her observation of the victim's physical appearance.  *Id.*; *Cozine v. Hawaiian Catamaran, Ltd.*, 49 Haw. 77, 113-14, 412 P.2d 669, 691 (1966).  Such an inference will stand even though it is not supported by medical opinion provided that it is rational and based upon proven facts.  *See Fukuoka v. Dodo*, 43 Haw. 337, 340 (Haw. Terr. 1959).

---

he threw the f'ing lock at me."  Sharon and Jesse's testimonies present a reasonable basis from which the jury might have inferred the requisite intent.

The record in this case discloses substantial evidence to support the conviction. Sharon and Jesse both testified that they saw Arquilla drop the infant. Sharon testified that she heard a "tunk" sound when the infant hit the floor and the sound of the baby's breath as "huuuh" followed by crying that was louder than it was prior to the infant being dropped. Jesse testified that the baby screamed upon being dropped. Officer Silva testified that when he observed the infant within hours of the time that she had reportedly been dropped, she appeared to be distressed, not breathing well, her color was off, and she was foaming at the mouth. It was the jury's prerogative to credit this testimony over testimony from Arquilla, who denied that the infant had been dropped, or Ben, whose testimony challenged Sharon and Jesse's credibility.

Furthermore, this finding is not inconsistent, as Arquilla suggests, with the opinions of the emergency medical service personnel, the medical doctor, or the other evidence to the effect that the infant did not have any visible injuries. That evidence did not establish, and did not purport to establish, that the infant did not experience physical pain hours earlier.

The jury was entitled to infer based on the lay witness testimony in this case that the infant felt pain after being dropped from waist-height onto a linoleum floor. Thus, there was substantial evidence to support the jury's decision.

## III. The Family Court's Response To The Jury's Second Communication Was Not Prejudicially Insufficient, Erroneous Or Misleading

At the close of the evidence, the family court instructed the jury that "[a] person commits the offense of Abuse of Family and Household Member if she intentionally, knowingly, or recklessly physically abuses a family or household member." The court explained that "'[p]hysical abuse' means causing bodily injury to another person[,]" and that "'[b]odily injury' means physical pain, illness or any impairment of physical condition."

Approximately twenty-four hours later, the jury sent its second communication to the court: "Does fear on the baby's part constitute 'pain' . . . is 'pain' defined as only physical, or can it include psychological pain/distress [] (from fear) [?]" Arquilla recommended that the family court explicitly instruct the jurors that "no, 'pain' is defined as only physical." The family court, however, referred the jury back to the part of the jury instructions explaining that "bodily injury" means physical pain, illness or any impairment of physical condition:

> I don't think that improvisation on my part is appropriate if the instruction itself answers the question. It is common experience that despite the fact that we are familiar with the instructions, because we've been over them a number of times, but that doesn't mean that they're - that they are commonplace to the jurors. They are still dealing with sets of instructions, which while, plain on their face are - are new to them. So, over defense objection, I'm simply going to have the instruction that harks them back to page 9, lines 5 through 7.

The family court's decision to refer the jury back to the original instructions was consistent with Hawaiʻi Supreme Court's reference to section 5.3 of the American Bar Association, *Standards Relating to Trial by Jury*, which provides that: "If the jury, after retiring for deliberation, desires to be informed on any point of law . . . [t]he court shall give appropriate additional instructions in response to the jury's request unless . . . the jury may be adequately informed by directing their attention to some portion of the original instructions[.]" *State v. Laurie*, 56 Haw. 664, 672, n.4, 548 P.2d 271, 277, n.4 (1976); *see also State v. Mark*, 120 Hawaiʻi 499, 528-29, 210 P.3d 22, 51-52 (App. 2009) (trial court did not err in referring jury back to the instructions given at trial since they covered the same law as proposed by defendant and they were not prejudicially insufficient, erroneous, inconsistent, or misleading).

In the instant case, the definition of "bodily injury" included in the initial instructions unambiguously provided that the type of pain that satisfied the bodily injury requirement was physical pain. Directing the jurors to that section of the instructions, therefore, succinctly and correctly answered their question.

Arquilla's contention that the question itself suggested that the jury did not understand that portion of the instructions is speculative and not supported by the record. Furthermore, as in *Laurie*, the record does not show that the court's reference back to a portion of the original instruction had confused or left an erroneous impression in the minds of the jurors. Thus, there is no basis for vacating Arquilla's conviction on this ground.

## IV.   Conclusion

For the foregoing reasons, we affirm the July 15, 2008 Judgment of Conviction and Sentence entered in the Family Court of the First Circuit.


DATED:   Honolulu, Hawai'i, July 21, 2010.

On the briefs:

Craig W. Jerome,
Deputy Public Defender,
for Defendant-Appellant.

Loren J. Thomas,
Deputy Prosecuting Attorney,
City & County of Honolulu,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge