Leonard v. SSA                          CV-00-172-M    12/19/00
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Bonnie G. Leonard,
     Claimant

     v.                                    Civil No. 00-172-M
                                           Opinion No. 2000 DNH 262
Kenneth S. Apfel, Commissioner
Social Security Administration,
     Respondent


                            O R D E R


     Pursuant to 42 U.S.C. § 405(g), claimant, Bonnie Leonard,

moves to reverse the Commissioner's denial of her application for

Social Security Disability Insurance Benefits under Title II of

the Social Security Act, 42 U.S.C. § 423 (the "Act").  Ms.

Leonard says the Administrative Law Judge failed to properly

consider the disabling nature of her exertional limitations and

improperly discounted her complaints of substantial pain before

concluding that she was not disabled within the meaning of the

Act.  Respondent objects and moves for an order affirming the

decision of the Commissioner.

**Factual Background**

I.   <u>Procedural History</u>.

On May 26, 1994 claimant filed an application for disability insurance benefits under Title II of the Act, alleging that she had been unable to work since December 9, 1993, due to pain and exertional limitations imposed as a result of fibromyalgia. Her application was denied initially and on reconsideration. An administrative law judge then considered claimant's application and, on January 23, 1996, concluded that she was not disabled. Claimant moved the Appeals Council to review the ALJ's disability determination and, after discovering that the tape recording of claimant's administrative hearing had been lost, the Appeals Council remanded the matter to the ALJ for another hearing.

On December 10, 1997, the ALJ conducted a second hearing at which claimant, accompanied by her attorney, appeared and testified. By decision dated February 23, 1998, the ALJ again determined that claimant was not disabled within the meaning of the Act, concluding that she was capable of performing her past relevant work. Transcript at 17. The Appeals Council denied

claimant's request for review, rendering the ALJ's decision the final decision of the Commissioner. In response, claimant filed this timely action, asserting that the ALJ's decision was not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act. Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 4). The Commissioner objected and filed a "Motion for Order Affirming the Decision of the Commissioner" (document no. 7). Those motions are pending.

II. Stipulated Facts.

Pursuant to this court's Local Rule 9.1(d), the parties have submitted a statement of stipulated facts which, because it is part of the court's record (document no. 6), need not be recounted in this opinion.

**Standard of Review**

I. Properly Supported Findings by the ALJ are Entitled to Deference.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to enter, upon the pleadings and transcript of the record, a

3

judgment affirming, modifying, or reversing the decision of the Secretary [now, the "Commissioner"], with or without remanding the cause for a rehearing." Factual findings of the Commissioner are conclusive if supported by substantial evidence. See 42 U.S.C. §§ 405(g), 1383(c)(3); Irlanda Ortiz v. Secretary of Health and Human Services, 955 F.2d 765, 769 (1st Cir. 1991).[1] Moreover, provided the ALJ's findings are supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the claimant's position. See Gwathney v. Chater, 104 F.3d 1043, 1045 (8th Cir. 1997) (The court "must consider both evidence that supports and evidence that detracts from the [Commissioner's] decision, but [the court] may not reverse merely because substantial evidence exists for the opposite decision."). See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995)

---

[1] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). It is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).

(The court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation."); Tsarelka v. Secretary of Health and Human Services, 842 F.2d 529, 535 (1st Cir. 1988) ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence.").

In making factual findings, the Commissioner must weigh and resolve conflicts in the evidence. See Burgos Lopez v. Secretary of Health and Human Services, 747 F.2d 37, 40 (1st Cir. 1984) (citing Sitar v. Schweiker, 671 F.2d 19, 22 (1st Cir. 1982)). It is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts." Irlanda Ortiz, 955 F.2d at 769. Accordingly, the court will give deference to the ALJ's credibility determinations, particularly where those determinations are supported by specific findings. See Frustaglia v. Secretary of Health and Human Services, 829 F.2d

192, 195 (1st Cir. 1987) (citing <u>Da Rosa v. Secretary of Health and Human Services</u>, 803 F.2d 24, 26 (1st Cir. 1986)).

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking Social Security disability benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 416(i)(1)(A).  <u>See also</u> 42 U.S.C. § 1382c(a)(3).  The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health and Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove that her impairment prevents her from performing her former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985) (citing <u>Goodermote v. Secretary of Health and Human Services</u>, 690 F.2d 5, 7 (1st Cir. 1982)).  Nevertheless, the claimant is not required to establish a doubt-

6

free claim.  The initial burden is satisfied by the usual civil standard: a "preponderance of the evidence."  See Paone v. Schweiker, 530 F. Supp. 808, 810-11 (D. Mass. 1982).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health and Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote, 690 F.2d at 6.  Provided the claimant has shown an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  See Vazquez v. Secretary of Health and Human Services, 683 F.2d 1, 2 (1st Cir. 1982).  If the Commissioner shows the existence of other jobs that the claimant can perform, then the overall burden to demonstrate disability remains with the claimant.  See Hernandez v. Weinberger, 493 F.2d

7

1120, 1123 (1st Cir. 1974); Benko v. Schweiker, 551 F. Supp. 698, 701 (D.N.H. 1982).

When determining whether a claimant is disabled, the ALJ is required to make the following five inquiries:

(1) whether the claimant is engaged in substantial gainful activity;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals a listed impairment;

(4) whether the impairment prevents the claimant from performing past relevant work; and

(5) whether the impairment prevents the claimant from doing any other work.

20 C.F.R. § 404.1520. See also 20 C.F.R. § 416.902. Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [s]he lives, or whether a specific job vacancy exists for [her], or whether [s]he would be hired if [s]he applied for work.

42 U.S.C. § 423(d)(2)(A).  See also 42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm his decision.

**Discussion**

I.   Background - The ALJ's Findings.

In concluding that Ms. Leonard was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 404.1520.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since December of 1993.  Transcript at 14.  Next, the ALJ concluded that although "the record contains no hard evidence to support more than minimal functional limitations," claimant does suffer from fibromyalgia.  Id.  He then concluded that claimant's condition constituted a "severe impairment."  Transcript at 18.  At step three of the sequential analysis, the ALJ concluded that

9

claimant's impairment did not meet or equal a listed impairment. Transcript at 16.

The ALJ then concluded his analysis and determined, notwithstanding the severe nature of her impairment, that claimant retained the "residual functional capacity to perform the exertional and nonexertional requirements of work except for lifting, carrying, pushing or pulling more than 20 pounds." Transcript at 18. Accordingly, he concluded that claimant was not precluded from returning to her prior work as a punch press operator or circuit board assembler. Transcript at 18. There was, therefore, no need to continue to the fifth step in the sequential analysis.

II. Fibromyalgia.

It is undisputed that claimant suffers from fibromyalgia. See Transcript at 14 (the ALJ concluded that, "it is clear that [claimant] has had a long history of treatment and it is clear that she has a valid diagnosis of fibromyalgia."). Although neither the parties nor the ALJ has addressed it, it would seem

10

appropriate to begin with some discussion of the nature and typical physical manifestations of that disease.

According to one basic source, "the term 'fibromyalgia' literally means muscle fiber pain. FM is a chronic disorder that develops gradually and is long-lasting, although it may be punctuated by acutely painful episodes." 6 Attorneys' Textbook of Medicine, para. 25.00 (3d ed. 1999). That source goes on to describe the condition as follows:

> Patients with FM have had feelings of soreness, often quite marked, all over their bodies for six months or longer. Fibromyalgia is a type of chronic pain syndrome affecting the soft tissues, which may, as cause or effect, involve some sort of psychological disorder or an abnormal response to stress. Typically patients describe deep aching, throbbing, or a burning feeling, and they may feel totally drained of energy. Frequently pain is most severe at certain "tender points" that tend to be the same in most patients. The picture of FM often includes trouble sleeping deeply, headaches, chest pains, dizziness, and symptoms of "irritable bowel." There tend to be periods of especially severe pain alternating with times of little or no discomfort. What FM does not do, despite the long-standing pain, is cause permanent tissue damage or deformity.

Id., at para. 25.01.  See also Aimee E. Bierman, Note, The Medico-Legal Enigma of Fibromyalgia: Social Security Disability Determinations and Subjective Complaints of Pain, 44 Wayne L. Rev. 259, 259 (1998) ("Fibromyalgia is the most prevalent chronic musculoskeletal pain syndrome.  It is characterized by widespread, diffuse muscle pain, an absence of structural or inflammatory musculoskeletal abnormalities, decreased pain thresholds, profound fatigue, and sleep disturbances.  While it is not fatal or progressively disabling, rheumatologists consider it to be profoundly incapacitating in the most severe cases.") (footnotes omitted).

One of the problems posed in the context of an application for Social Security disability benefits is that, as demonstrated in this case, there are no recognized medical tests (i.e., objective evidence) that will definitively confirm a diagnosis of fibromyalgia or establish the degree of disability caused by that illness.  At least one legal commentator, an Administrative Law Judge with the Social Security Administration, has published an article discussing this very issue:

12

Currently, no objective findings or lab test for fibromyalgia are commonly accepted in the medical community.  Despite the results of several studies, it seems that the research still has a way to go before the medical community at large will accept one or more laboratory or imaging tests as diagnostically determinative.

The most widely accepted criteria for the diagnosis of fibromyalgia are the American College of Rheumatology (ACR) 1990 Criteria for the Classification of Fibromyalgia.  There are two criteria: a history of widespread pain, as defined in the criteria, and pain in 11 of 18 tender point sites when pressed or "palpated" by a physician.  The criteria state that for a tender point to be considered "positive," the patient must say the palpation was painful.

Importantly, the "tender points" of the ACR criteria are not objective signs.  One of the authors of the criteria has called the points a "notoriously unreliable and manipulable exercise."

Common sense alone dictates that if a physician touches a person's body and the person tells the physician that it hurts, this is a subjective response by the patient. Even a wince or a jerk in response to palpation can be feigned.

Kevin F. Foley, Establishing Medically Determinable Impairments, 35 APR Trial 66, 70 (April, 1999) (footnotes omitted).


Consequently, this case, like so many others involving claimants diagnosed with fibromyalgia, turns largely upon an

13

assessment of the credibility of Ms. Leonard's assertion that she suffers from disabling pain, as well as a determination of the weight properly to be ascribed to the opinions of her treating physicians.

III. <u>Claimant's Treating Physicians</u>.

Ms. Leonard's treating physicians appear to agree that she suffers from a severe case of fibromyalgia that, at a minimum, would substantially interfere with her ability to hold gainful employment. In November of 1994, Dr. Theodore Capron gave the following opinion:

> Regarding your interest in the patient's ability to do basic work activities, the patient and her husband stated at past visits that she has significant pain any time that she is even touched lightly. She has stiffness of her joints as well. She has a number of trigger points positive, as mentioned in Dr. Shirley's evaluation.
>
> It is my opinion that this patient would have difficulty holding a steady position of any sort, including sitting or standing; also, walking, lifting, carrying and bending would be difficult if done in any repetitive fashion. She would not be able to do any heavy lifting of any sort. Due to her pain and sense of impairment, I suspect that any job would be difficult, and the hours would have to be limited.

14

Transcript at 143. In December of 1994, Dr. Capron reiterated his view that claimant was substantially limited in terms of the range of work-related activities that she might perform: "It is my belief that this patient has severe fibromyalgia which would restrict her ability to do all basic work-related activities such as sitting, standing, walking, lifting, carrying and bending." Transcript at 145. Approximately three years later, Dr. David Mattice rendered a similar opinion:

> Impression: severe fibromyalgia. In summary I do not feel that Bonnie is capable of much of any work other than something where she could remain sitting most of the time and could not lift anything over 5 lbs. This physical condition has not changed since I first met Bonnie as a new patient of my own on 10/21/96.

Transcript at 192.[2]

Although claimant's treating physicians' ultimate opinions concerning disability are not controlling, see 20 C.F.R. §

_____

[2] According to the ALJ's decision, he held the record open following the hearing so that claimant might submit additional opinion evidence in support of her claim. It appears, however, the Dr. Mattice's opinion (dated January 2, 1998) was not provided to the ALJ until after he issued his decision, on February 23, 1998. See Transcript at 193.

15

404.1527(e), their evaluations of her ability to perform various work-related tasks (e.g., sit, stand, lift, etc.) are certainly probative of the extent of claimant's abilities. Nevertheless, the ALJ discounted those opinions, concluding that they were "not substantiated by objective medical signs required by 20 C.F.R. 404.1527." Transcript at 15. Again, this highlights the difficulty associated with disability claims submitted by people suffering from diseases that cannot be confirmed or diagnosed by "objective" medical testing or imaging techniques. What is clear, however, is that a person genuinely suffering from severe fibromyalgia could reasonably be expected to experience the substantial limitations that both Ms. Leonard and her treating physicians agree render her disabled.

IV.  Claimant's Subjective Complaints of Disabling Pain.

No one appears to doubt that claimant is impaired and suffers from pain. The relevant inquiry is, of course, whether that pain is of a degree that renders her disabled within the meaning of the Act.

16

To determine whether a claimant is disabled, an ALJ must assess the claimant's ability to perform work-related tasks (also known as "residual functional capacity" or "RFC").[3] In conducting that inquiry, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own description of those physical limitations, including her subjective complaints of pain. See Manso-Pizzarro v. Secretary of Health and Human Services, 76 F.3d 15, 17 (1st Cir. 1996). When the claimant has demonstrated that she suffers from an impairment that could reasonably be expected to produce the pain or side effects she alleges, the ALJ must then evaluate the intensity, persistence, and limiting effects of the claimant's

---

[3] "RFC is what an individual can still do despite his or her functional limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184 at *2 (July 2, 1996) (citation omitted).

17

symptoms to determine the extent to which those symptoms limit

her ability to do basic work activities.

> [W]henever the individual's statements about the
> intensity, persistence, or functionally limiting
> effects of pain or other symptoms are not substantiated
> by objective medical evidence, the adjudicator must
> make a finding on the credibility of the individual's
> statements based on a consideration of the entire case
> record.  This includes medical signs and laboratory
> findings, the individual's own statements about the
> symptoms, any statements and other information provided
> by the treating or examining physicians or
> psychologists and other persons about the symptoms and
> how they affect the individual . . ..
>
> In recognition of the fact that an individual's
> symptoms can sometimes suggest a greater level of
> severity of impairment than can be shown by the
> objective medical evidence alone, 20 C.F.R. 404.1529(c)
> and 416.929(c) describe the kinds of evidence,
> including the factors below, that the adjudicator must
> consider in addition to the objective medical evidence
> when assessing the credibility of an individuals'
> statements.

Social Security Ruling ("SSR") 96-7p, <u>Assessing the Credibility</u>

<u>of an Individual's Statements</u>, (July 2, 1996).  Those factors

include the claimant's daily activities; the location, duration,

frequency, and intensity of the claimant's pain or other

symptoms; factors that precipitate and aggravate the symptoms;

the type, dosage, effectiveness, and side effects of any

medication the claimant takes (or has taken) to alleviate pain or other symptoms; and any measures other than medication that the claimant receives (or has received) for relief of pain or other symptoms. Id. See also Avery, 797 F.2d at 23; 20 C.F.R. § 404.1529(c)(3).

It is the ALJ's role to assess the credibility of claimant's asserted inability to work in light of the medical record, to weigh the findings and opinions of both "treating sources" and other doctors who have examined her and/or reviewed her medical records, and to consider the other relevant factors identified by the regulations and applicable case law. When properly supported by record evidence, such credibility determinations are entitled to substantial deference from this court. See, e.g., Irlanda Ortiz, 955 F.2d at 769 (holding that it is "the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner] not the courts").

19

Here, the ALJ acknowledged that claimant said she had difficulty performing even relatively simple and routine household tasks, could not drive because of her pain, and remains essentially house-bound as a result. He also acknowledged claimant's assertion that she experiences additional pain when she attempts to climb, lift, squat, or kneel. Transcript at 16. However, the ALJ determined that claimant's testimony, particularly that concerning the nature and extent of her pain, was not credible. In reaching that conclusion, the ALJ cited three factors: (1) that claimant "refused to take medication, do aerobic or other exercises, and to otherwise follow treating physician recommendations" (transcript at 15); (2) that claimant appeared to be in "no significant discomfort" at either of the hearings before the ALJ (transcript at 15); and (3) the ALJ's belief that "if she indeed had such severe pain as to be debilitating just on wearing clothes then she would evidence emotional symptoms consistent with such constant strain," (transcript at 16), which the ALJ concluded she did not exhibit.

20

A.    Failure to Follow Prescribed Treatment Protocols.

In concluding that claimant's testimony was not entirely credible, the ALJ first noted that she "has not followed through with prescribed medical therapy and indeed has not required much therapy for treatment."  Transcript at 17.  See generally 20 C.F.R. § 404.1530 ("In order to get benefits, you must follow treatment prescribed by your physician if this treatment can restore your ability to work.").  The ALJ appears, however, to have confused some of the record evidence.  Claimant was first referred to a physical therapist in 1993, after she complained of upper/mid back pain (prior to her diagnosis of fibromyalgia).  Claimant appears to have dutifully attended physical therapy, but reported that she felt little benefit from it.  Consequently, in February of 1994, Dr. Capron recommended that she discontinue it.  Transcript at 137.  See also Transcript at 157 (notes of Dr. Capron dated 3/28/95, reporting that, in light of claimant's current diagnosis, other than suggesting claimant address her pain with medication, he had "little else to offer her in the way of therapy.").  Thus, while it is probably true that claimant could have been more vigilant about performing stretching

21

exercises and engaging in aerobic exercise at home to keep her muscles fit and limber, <u>see</u> transcript at 150, it cannot be said that she failed to follow-through on prescribed therapy.

It also bears noting that the ALJ appears to have attributed excessive weight to the notes of Mr. Lawrence, claimant's physical therapist.  In 1993, when claimant was referred to Mr. Lawrence, she was experiencing back pain that, among other things, was interfering with her ability to sleep.  At the time, she was diagnosed with "postural strain."  Transcript at 103.  Based upon a review of Mr. Lawrence's notes, the ALJ made the following observations:

> A review of Mr. Lawrence's notes show(s) subjective complaints of pain alleged to rise to a 9 on a 10-point scale in severity.  These are far, far beyond [those] which can reasonably be expected from objective medical evidence of her condition.  At the time he saw her she was diagnosed as having chronic strain from poor sitting posture at work and home.  No neurological symptoms were manifest.  He did not adopt her characterization of the intensity of her pain.

Transcript at 15.

22

It is important to note, however, that although claimant's reported symptoms at that time appear to have been entirely consistent with fibromyalgia, none of her treating physicians had yet diagnosed that condition (and she had yet to have a consultation with Dr. Shirley, a rheumatologist). So, while claimant's subjective complaints of pain may have seemed "far, far beyond [those] which can reasonably be expected" for someone suffering from "postural strain," transcript at 15, they were probably not extraordinary for someone suffering from severe fibromyalgia, as all now seem to agree claimant does (and probably did at the time she saw Mr. Lawrence). In short, to conclude that claimant was overstating the severity of her pain by comparing her complaints with those of people suffering from back strain would seem inappropriate. It is entirely possible that claimant was accurately relating the extent and nature of her pain, but her treating physicians had yet to realize that she was suffering from a condition more serious than postural strain.

The ALJ's conclusion that claimant "refused to take medication," transcript at 15, is also unsupported. The record

reveals that claimant tried various pain medications, but found that they provided little relief or believed the side-effects were less tolerable than her pain. See, e.g., transcript at 134 ("She was unable to tolerate the Naprosyn due to GI side effects."); transcript at 157 ("Found that when she was taking Flexeril and Elavil that she was doing 'stupid things' like putting muffins in the dishwasher and unable to operate other kitchen appliances. She is not having any recurrence of [these] confusion problems after stopping those medications and doesn't feel she is significantly worse off them."). See also transcript at 188 ("The Daypro didn't help at all so we have asked her to stop that. . . . The Ambien did not help with the sleep any better than Nyquil, which she prefers to use."); transcript at 140 ("Taking Elavil 20 h.s. with no [e]ffect.").

Unfortunately, the ALJ did not address the fact that claimant's own physicians seem to acknowledge that many (if not all) of the medications prescribed for claimant provided little relief. The ALJ did not consider the adverse side-effects of claimant's pain medications and failed to discuss how they might

24

have affected her decision to stop taking them.  Of course, the mere fact that a patient declines to take pain medication does not, standing alone, support a conclusion that he or she is not in pain.  See, e.g., SSR 96-7p ("The individual may not take prescription medication because the side effects are less tolerable than the symptoms.").

B.   Claimant's Apparent Lack of Discomfort at the Hearing.

Part of an ALJ's credibility determination necessarily involves an assessment of a claimant's demeanor, appearance, and general "believability."  Here, the ALJ found claimant's allegations of pain "incredible, particularly as she was in no significant discomfort at both hearings."  Transcript at 15. Parenthetically, the court notes that during the course of the second hearing (the only hearing as to which a transcript is available), claimant actually commented on her physical discomfort and asked the ALJ if he would permit her to stand to alleviate the pain in her lower back.  See Transcript at 45.

25

In any event, one must be careful not to ascribe too much weight to a claimant's appearance at a brief hearing before an ALJ. Here, for example, the administrative hearing lasted only 21 minutes. See Transcript at 33 and 47. And, as is typical for patients suffering from fibromyalgia, claimant's symptoms wax and wane, giving her periods of relative comfort, while also leaving her, at times, with substantial pain. See, e.g., transcript at 187 (describing claimant's pain as "fleeting" from area to area); transcript at 190 (describing claimant's pain as "flaring"). See also 6 Attorneys' Textbook of Medicine, at para. 25.00 (noting that patients with fibromyalgia tend to experience "periods of especially severe pain alternating with times of little or no discomfort."). Consequently, the fact that the ALJ perceived claimant to be in no substantial distress during the course of the relatively brief administrative hearing (notwithstanding her comments to the contrary) provides little insight into the overall credibility of her claims, given the disease at issue.

In fact, several courts of appeals have cautioned against relying too heavily upon a perception that the claimant was not

26

in physical discomfort during the course of an administrative hearing.  The Court of Appeals for the Fifth Circuit, for example, has held:

> The rejection of Lovelace's claim suffers from a third defect.  In reaching his decision, the ALJ expressed a good deal of skepticism regarding Lovelace's complaints of pain, particularly because Lovelace did not appear to be experiencing severe pain at the hearing.  While it is the task of the ALJ to resolve conflicts in the evidence and to make credibility determinations, his decisions must be supported by substantial evidence. Even if a person's demeanor can be taken to reflect his degree of pain when that pain is chronic, the issue is not how much pain Lovelace suffers when he is at rest. The relevant question is how much pain he experiences when trying to work.  Lovelace's demeanor at the hearing sheds little, if any, light on that question.

Lovelace v. Bowen, 813 F.2d 55, 59-60 (5th Cir. 1987).  See also Miller v. Sullivan, 953 F.2d 417, 422 (8th Cir. 1992) ("Although the demeanor of a claimant may be noticed by an ALJ, the ALJ cannot reject a claimant's credibility on account of a failure to 'sit and squirm' during a hearing."); Jenkins v. Sullivan, 906 F.2d 107, 108 (4th Cir. 1990) (rejecting an ALJ's use of so-called "sit and squirm jurisprudence").

Just as a claimant's ability to perform relatively modest household chores over brief periods of time tends, without more, to shed little light on his or her ability to perform the requirements of full-time employment, see, e.g., Polidoro v. Apfel, 60 Soc. Sec. Rep. Ser. 664, 1999 WL 203350 at *8 (S.D.N.Y. April 12, 1999) ("A claimant's participation in the activities of daily living will not rebut his or her subjective statements of pain or impairment unless there is proof that the claimant engaged in those activities for sustained periods of time comparable to those required to hold a sedentary job."), so too does a claimant's apparent lack of physical discomfort during a brief administrative hearing provide little reliable evidence that he or she is fabricating or overstating the nature or extent of his or her pain. In short, a claimant's ability to sit for a relatively brief period without giving outward indications that he or she is in pain sheds little light on whether that pain disables the claimant from holding full-time gainful employment.

C.    Claimant's Emotional Symptoms.

Finally, in concluding that claimant's assertions of debilitating pain were substantially overstated, the ALJ made the following observation:

> While I do note an aura of impairment about the claimant, it is not 9 on a 10-point scale.  It is reasonable to believe, as I do, that if she indeed had such severe pain as to be debilitating just on wearing clothes then she would evidence emotional symptoms consistent with such constant strain.  Yet she does not; the record shows no mental impairment and the claimant herself testified that any depression centers around her relative loss of functional ability from previously.

Transcript at 16.  Notwithstanding the ALJ's conclusion to the contrary, however, the record does contain references to claimant's depressed mental state as a consequence of her pain.  And, despite claimant's failure to seek (or her physicians' failure to refer her to) a psychiatrist or other counselor, the record does suggest that her physical discomfort has taken a measurable toll on her psychological well-being.

First, as the ALJ correctly noted, claimant testified that her inability to complete household chores due to her pain had

29

caused her considerable frustration and depression.  Transcript at 38.  Dr. Shirley, a rheumatology specialist, observed that claimant's reports of near-constant pain, particularly when touched, and its resultant negative impact on her sexual relationship with her husband, has caused "increased stress in the marriage and herself."  Transcript at 148.  He also discussed with claimant "the role of stress in the management of fibromyalgia and trying to reduce the levels of stress and coping better with stress."  Transcript at 150.  Additionally, Dr. Mattice noted that claimant's "sleep is disturbed by her chronic pain and it creates a depressed mood most of the time."  Transcript at 191.  Dr. Capron's notes also contain references to claimant's depressed mental status.  See, e.g., transcript at 144.

In light of the foregoing, it appears that, contrary to the ALJ's conclusion, claimant does have at least some "emotional symptoms consistent with such constant strain."  Transcript at 16.

## Conclusion

The ALJ's conclusion that the claimant is not disabled within the meaning of the Social Security Act is not supported by substantial evidence. Accordingly, the Commissioner's motion for an order affirming the Commissioner's decision (document no. 7) is denied. Claimant's motion for an order reversing the Commissioner's decision (document no. 4) is granted to the extent claimant seeks a remand to the ALJ. Pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the ALJ is vacated and the case is remanded to the ALJ for further proceedings consistent with this decision. The Clerk of Court shall close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

December 19, 2000

cc:  Thomas F. McCue, Esq.
     David L. Broderick, Esq.

31